## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EXPLORICA, INC.

        Plaintiff,

    v.

ELDERHOSTEL, INC.
d/b/a EXPLORITAS,

        Defendant.

Civil Action No.  09-11719

### FIRST AMENDED COMPLAINT

1.    This case concerns the infringement of the distinctive service mark EXPLORICA (the "Mark"), owned by plaintiff Explorica, Inc. ("Explorica"), a Boston, Massachusetts-based provider of educational travel services.  Explorica has used the EXPLORICA Mark to identify itself and its services continuously since 2000.  Explorica has invested tens of millions of dollars establishing and promoting the EXPLORICA brand and, as a result, it has developed substantial goodwill in the Mark.  Over the past nine years, Explorica has provided educational travel services to over 155,000 customers, and the EXPLORICA Mark has become famous among those seeking such services.

2.    Explorica recently learned that Elderhostel, Inc. ("Elderhostel"), a long-time local competitor in the educational travel space, has rebranded its travel services from ELDERHOSTEL to EXPLORITAS, a name that is virtually identical to EXPLORICA.

3.    In addition to its adoption of a new word mark, Elderhostel adopted a new logo or design mark featuring a stylized lower-case letter "E" standing alone, which is confusingly similar to Explorica's logo, which also is a stylized lower-case letter "E" standing alone (the "E Design Mark"; together with the EXPLORICA Mark, the "EXPLORICA Marks").

4.      Contemporaneous with its adoption of both a confusingly similar mark and a confusingly similar logo, Elderhostel announced that it has abandoned its traditional focus on the over-55 educational travel market, and lowered its minimum participant age to 21.  Prior to this change in its customer focus, Elderhostel and Explorica had significant overlapping potential customer bases.  With this change, however, Elderhostel is now encroaching significantly deeper into Explorica's customer base.

5.      Given Explorica's fame in the educational travel market – and that both parties are long-established in a small market space with headquarters in the same city – there is little doubt that Elderhostel was aware of Explorica's prior use of and rights in the EXPLORICA Marks at the time it chose to adopt a confusingly similar mark and logo.  Putting aside Elderhostel's actual knowledge of Explorica's rights, Elderhostel is deemed to be on at least constructive notice of Explorica's rights by virtue of its incontestable federal registration for the EXPLORICA Mark, U.S. Regis. No. 2,732,669.  As such, upon information and belief, Elderhostel's adoption of a confusingly similar mark and logo was intentional and designed to free ride on Explorica's established goodwill.

6.      Elderhostel's rebranding is already causing actual confusion in the marketplace.  For example, a customer was recently referred to Elderhostel and told it had changed its name.  That customer proceeded to contact Explorica, discuss travel options, and request price quotes for several travel itineraries when his intention was to reach Elderhostel under its new name.  In addition, Air France, a significant vendor and business partner of Explorica's, recently received a group booking request from Explorica, secured seats for the group, but sent the confirmed flight booking to "Exploritas."

7.      Elderhostel's conduct constitutes federal trademark infringement (15 U.S.C. §§ 1114 and 1125(a)), statutory and common law trademark infringement and dilution under the laws of the Commonwealth of Massachusetts, and unfair competition under Mass. Gen. L. ch. 93A.

8.      On October 2, 2009, promptly upon learning of the rebranding, Explorica sent Elderhostel a cease and desist letter demanding that it stop using the confusingly similar EXPLORITAS mark.  Elderhostel, through its counsel, replied on October 6, 2009.  It refused to comply.

## PARTIES

9.      Explorica, Inc. is a Delaware corporation with its principal place of business at 145 Tremont Street, 6th Floor, Boston, Massachusetts 02111.

10.     Upon information and belief, defendant Elderhostel, Inc. is a Massachusetts corporation with its principal place of business at 11 Avenue de Lafayette, Boston, Massachusetts 02111.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

12.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where (i) a substantial part of the events or omissions giving rise to the claim occurred; and (ii) where Defendants are subject to personal jurisdiction.

## FACTS

### Explorica's Educational Travel Services

13.     Explorica is a private company founded in 2000 that provides educational travel services from offices worldwide, including Boston, San Diego, Toronto, London, Merida (Mexico), and Nanjing (China).  It is a market-leader among educational travel service providers with approximately 150 employees and millions of dollars in annual sales.

14.     Explorica is a full-service educational travel company.  It offers hundreds of educational tour packages that it designs in-house to Europe, Asia, South America and elsewhere.  The tours focus on experiential learning and are led by professional Tour Directors who are highly educated on the various sites visited on the trip.  Explorica also acts as a one stop shop for participants to reserve and book the travel, transfers, meals, lodging, and activities that correspond with the specific educational programs.  Due to the nature of its business, Explorica has agents and vendors throughout the world who provide critical services to it.  These agent and vendor relationships allow Explorica to offer the highest quality tour experiences at the lowest prices and to quickly resolve any travel related issues that occur abroad.

15.     Explorica distinguishes itself from its competitors not just with its superior educational travel options and its high-quality professional Tour Directors, but with its unique trip features.  For example, Explorica uses a website that connects individuals within tours (through social-media such as Facebook and Twitter) and hosts on-line tour diaries that permit parents and friends to follow a tour group's progress with narrative and pictures.  Explorica does much more than book flights and hotels, it facilitates a high quality group trip and handles all the details, which allows the participants to focus on the important educational aspects of the tour.

16.     Explorica has three principal customers: teachers, parents, and students.   In many cases, Explorica provides its services to teachers as an initial point of contact.  Typically, a teacher will choose Explorica as the educational travel organizer for a class trip and the parents and students will use Explorica to book and manage their participation in the trip.  In other words, the teacher is the initial decision maker who selects Explorica's services and the adult chaperones, parents, students who sign up for the Explorica tour are the ultimate consumers of Explorica's services.  Importantly, given the nature and cost of international travel, its is the parents, rather than the students, who are most involved in the actual purchasing decision.  Explorica's customers also include schools and their administrations insofar as it is often school officials who must approve student trips.

17.     Explorica frequently sells its educational travel services to parents and students directly, without an initial contact from a teacher.  For example, in the past Explorica has offered a Summer Academy program that permits students to join educational tours and foreign language immersion programs with others from outside their school.  In this scenario, it is again typically the student's parents who are most involved in the actual purchasing decision.

18.     Explorica also sells religious-themed educational travel services through its Espiritour business unit.  Among other types of tours, Espiritour offers similar educational travel services as Explorica, except that Espiritour tours are primarily purchased by adults.  A customer may initially use Espiritour's website as a point of contact, but all Espiritour customers are directed through Explorica's own EXPLORICA-branded web site for booking their travel arrangements.

19.     In addition to customers who travel using Explorica's services and rely on the distinctive EXPLORICA Marks to identify Explorica's services, Explorica itself uses numerous

vendors and agents who also rely on the distinctive EXPLORICA Marks to direct services to those customers. Explorica's vendors include over 2,000 hotels, 1,000 restaurants, 45 bus companies, 20 ferry & cruise lines, 250 Tour Directors, and 150 guides.

### Explorica's Marks

20.     The EXPLORICA brand, including the EXPLORICA Mark and the E Design Mark, was initially developed for Explorica at substantial expense by the branding and design firm CMN Design. The branding campaign was so well received in the marketplace that CMN Design won the American Corporate Identity Award, a prestigious national branding competition, for its work.

21.     From the outset Explorica has understood the value in its distinctive name and has made a massive investment of time and money to promote its EXPLORICA brand and the goodwill it embodies.

22.     For example, every year Explorica distributes approximately 1,000,000 fliers, 270,000 catalogs and mini-brochures, 130,000 postcards, and 60,000 student application booklets worldwide. Explorica also markets itself by sending over 1,000,000 emails to customers and potential customers every year. All of these marketing efforts prominently feature the EXPLORICA Mark. In addition, Explorica touts its Marks using billboards, signs on buses and at airports, Tour Director uniforms, information boards in all participating hotels, backpacks, luggage tags, lanyards for participants, and business cards and stationery. As noted above, since its inception, Explorica has spent tens of millions of dollars marketing and promoting its EXPLORICA Marks.

23.     In order to protect its valuable name, Explorica applied for and was granted a federal registration for the EXPLORICA Mark for "tour guide services and travel arrangement

services and travel information services provided on a global computer network." *See* Exhibit A (Reg. No. 2,732,669, issued July 1, 2003).  That mark has since become incontestable, and, as a result, Explorica's registration is conclusive evidence of (*i*) the validity of the Mark, (*ii*) Explorica's ownership of the Mark, and (*iii*) Explorica's exclusive right to use the Mark in commerce.

24.     Explorica also took the additional step of registering the EXPLORICA word mark with the Commonwealth of Massachusetts for "tour guide services and travel arrangement services and information serviced provided over a global computer network." *See* Exhibit B (Reg. No. 65038, issued November 12, 2004).

25.     Given the international nature of its services, Explorica also has taken steps to protect its Mark in a wide-variety of foreign markets.  Specifically, Explorica is the owner of registrations for the EXPLORICA Mark in Argentina, Australia, Canada, Chile, the People's Republic of China, the Czech Republic, the European Community, Hong Kong, Hungary, Indonesia, Japan, Mexico, New Zealand, Norway, Poland, South Korea, the Russian Federation, Singapore, Slovenia, Sweden, Switzerland, South Africa, Taiwan, Thailand, and Turkey.  *See* Exhibit C (listing registrations).

26.     Explorica's numerous registrations reflect the enormous value of the goodwill embodied in its distinctive Mark.

27.     In addition to its EXPLORICA word mark, Explorica has common law rights in a design mark comprised of a stylized lower-case "E" with a horizontal axis across the middle:



Explorica has exclusively used the distinctive E Design Mark in commerce since at least 2000. The E Design Mark is inherently distinctive, but it also has acquired substantial secondary meaning as a result of Explorica's use and marketing efforts.  Consumers exclusively associate the E Design Mark with Explorica.  The E Design Mark is the subject of a pending federal trademark application.  *See* Exhibit D (Serial No. 77,830,804, filed September 21, 2009).

28.     In addition to diligently registering its Marks in numerous jurisdictions, Explorica has consistently protected its marks by sending cease and desist letters to competitors who adopt confusingly similar marks.  Until Elderhostel, each competitor has respected Explorica's intellectual property rights and acted accordingly.

**Elderhostel and its Intentional Adoption of a Confusingly Similar Mark and Logo**

29.     Upon information and belief, Elderhostel is an educational travel service company headquartered in Boston, Massachusetts and founded in 1975.  Elderhostel is a competitor of Explorica that provides identical educational travel services.  Like Explorica, Exploritas offers group educational travel programs, led by professional guides with knowledge of the destinations, and full-service travel reservations and booking.

30.     Upon information and belief, on or about September 22, 2009, Elderhostel announced that it was rebranding as EXPLORITAS and adopting a new logo.  Elderhostel's new

word mark – EXPLORITAS – is virtually identical and confusingly similar to the EXPLORICA Mark because it is the same coined word, but with only two letters different (a "T" in place of "C" and the addition of an "S"). It is only one letter different when "Explorica" is used in the possessive. In addition, Elderhostel adopted a new logo – a stylized lower-case "E" in the form of a globe with the horizontal line in the middle of the "e" as the equator – that is confusingly similar to Explorica's E Design Mark, which also is entirely comprised of a stylized lower-case "E" with a horizontal axis line.

31.   Elderhostel uses the EXPLORITAS mark as more than the name of its company; it also uses the mark in a variety of contexts and formats throughout its business that are similar to the ways in which Explorica uses its EXPLORICA Mark. For example, Exploritas recently acquired Lyon Travel and rebranded it "Exploritas Travel Services." Explorica has an affiliate that uses the name "Explorica Travel."

32.   Elderhostel uses the EXPLORITAS mark in conjunction with the tagline "Adventures in Lifelong Learning" which is thematically similar to Explorica's tagline "Travel. Learn." In addition, Elderhostel has recently launched online social networking features on its web site similar in functionality to Explorica's Tour Center™ and Tour Diary® applications.

33.   Elderhostel offers educational tours to many of the same international cities and sites as Explorica.

34.   Elderhostel uses many of the same vendors in the United States and abroad to facilitate its educational tours as Explorica. In many cases, both parties may use the same airlines, hotels, transfer agents, etc. Indeed, it was through a mutual vendor that Explorica first learned of the launch of the EXPLORITAS mark.

35.     Elderhostel markets itself to the same potential customers insofar as the teachers, school administrators, and parents who are Explorica's customers are frequently within Elderhostel's target market.  A significant portion of Elderhostel's past and present customers also include school age children, which are the same potential customers as Explorica.  For example, upon information and belief, Elderhostel has approximately 200 educational travel programs with 400 annual departures for school age children (who travel with a grandparent), which serve about 7,000 travelers every year.

36.     In addition to its substantial existing programs that target school age children, Elderhostel has taken steps to capture more of the youth market.  Specifically, Elderhostel announced contemporaneous with its rebranding that it was abandoning its traditional focus on older travellers and lowering its minimum participant age to 21.  According to its press release, Elderhostel's name change directly reflects a desire to capture a younger market and overcome inherent limitations in its existing ELDERHOSTEL name.  Steve Smith, the creative director at BrandEquity, the Newton firm that created the new EXPLORITAS name and logo, is quoted in the press release on this point: "*The old name Elderhostel presented a barrier to younger audiences*, yet the (organization's) tagline 'Adventures in Lifelong Learning' resonated with audiences of all ages."  *See* Exhibit E (emphasis added).  Importantly, over 45% of Explorica's current and prior customers are presently over 21, and are therefore customers that Elderhostel is likely to market its services to.

37.     Upon information and belief, Elderhostel and Explorica advertise through overlapping marketing channels insofar as they use the Internet, magazines, placards, and direct and electronic mail to advertise their services.  In addition, both parties are routinely the topic of

discussion in travel magazines and on popular travel websites and blogs concerning educational travel.

38.     Upon information and belief, given the fame of the EXPLORICA Marks, Elderhostel was aware of the Marks and adopted a confusingly similar mark and logo with the intent to free-ride on the consumer association between the marks and Explorica and the enormous goodwill Explorica has developed in the marks.

39.     Even absent the fame of the EXPLORICA Marks, upon information and belief, Elderhostel was aware of Explorica and its marks: both parties compete in a small product market offering the same services from the same city.  Moreover, senior executives at both parties are personally and professionally known to one another.  In any event, by virtue of its federal registrations, Elderhostel was on constructive notice of Explorica's rights in the EXPLORICA Mark.  As a result, Elderhostel was aware of the EXPLORICA Marks and copied them with the intent to free-ride on the consumer association between the marks and Explorica and the enormous goodwill Explorica has developed in the marks.

40.     Explorica never authorized Elderhostel to use the EXPLORICA Marks or any confusingly similar marks or logos.

**Elderhostel's Conduct Will Damage Explorica – Actual Confusion Has Already Occurred**

41.     Elderhostel's use of a mark and logo that are virtually identical to the EXPLORICA Marks, on or in connection with services that are so closely related to Explorica's goods, is likely to cause confusion, mistake, and deception among Explorica's customers and potential customers, vendors, and the general public, and to cause individuals and businesses to erroneously believe that Explorica has an affiliation, connection, or association with Exploritas, or that Explorica has sponsored or approved the use of its marks by Exploritas, all to the

irreparable harm and detriment of Explorica and the substantial goodwill it has developed in the EXPLORICA Marks.

42.      Putting aside traditional initial interest, point of sale, and post-sale confusion among customers and potential customers (each of which is likely and will cause irreparable harm), there also is a significant likelihood that vendors in the United States and abroad will confuse EXPLORICA and EXPLORITAS.  Indeed, this has already happened.  As noted above, a customer recently contacted Explorica when he had been referred to Elderhostel by a former Elderhostel customer, who had informed the customer that the company had recently changed its name.  This is a paradigmatic example of actual consumer confusion.  Similarly, Air France recently received a group booking request from Explorica, secured seats for the group, but sent the confirmed flight booking to Elderhostel.  Such confusion will cause Explorica's customers substantial inconvenience, *e.g.*, missed flights, absent hotel reservations, and denial of entry to educational sites requiring reservations.  Given the nature of the parties' services, any confusion by vendors has the potential to severely damage Explorica's goodwill.  Even a single customer who has a bad travel experience can cause Explorica to lose substantial business and suffer irreparable harm.

43.      In addition to damage to Explorica's goodwill, Elderhostel's adoption of a confusingly similar mark and logo is likely to cause damage to Explorica's business and contractual relations and adversely affect its ability to compete.  Explorica has established contractual relations with many of its vendors that include negotiated discounts, preferred pricing, and unique commercial terms.  These vendor terms are highly confidential trade secrets of Explorica that are never intentionally disclosed to competitors.  If a vendor is confused by the EXPLORITAS and EXPLORICA marks and Elderhostel mistakenly receives reservations or

booking information meant for Explorica it would expose Explorica's highly confidential commercial information to a competitor, which would jeopardize Explorica's contractual relationships and damage Explorica's ability to compete. The booking information Air France mistakenly sent to Elderhostel may have included such highly confidential commercial pricing information.

44.     Explorica deals with the Group Desk at every airline, most of whom identify Explorica as "EXP." This common designation is likely to increase the already high likelihood of confusion with EXPLORITAS among airlines and any other vendors who use such abbreviations.

45.     In light of the foregoing, Elderhostel's use of EXPLORITAS and stylized lower-case "E" logo are likely to cause confusion and irreparable harm to Exploritas. As a result, its use of these marks, and any other confusingly similar marks, should be preliminarily and permanently enjoined.

### COUNT I
### (Trademark Infringement—15 U.S.C. § 1114)

46.     Explorica repeats and realleges the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

47.     As described above, Explorica is the owner of an incontestable federal trademark registration No. 2,732,669 for the EXPLORICA Mark.

48.     Explorica's ownership and use in commerce of the EXPLORICA Mark predates the use by Elderhostel of the EXPLORITAS mark. Explorica's federal registration of the EXPLORICA Mark also predates the use by Elderhostel of the EXPLORITAS mark.

49.     Upon information and belief, given the fame of Explorica and its EXPLORICA Mark, Elderhostel's conduct is willful and intentional and intended to free-ride off of the

13

goodwill associated with the EXPLORICA Mark. Elderhostel is and was at all relevant times at least constructively aware of Explorica's prior use, ownership, and registration of the EXPLORICA Mark, and Elderhostel's conduct with respect to that mark is therefore also willful and intentional.

50.     Elderhostel uses its EXPLORITAS mark in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

51.     Elderhostel's use in commerce of the EXPLORITAS mark, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114 in that it is without Explorica's consent and is likely to cause confusion, mistake, and/or deception with respect to Explorica's registered trademark, all to the irreparable injury of Explorica and the goodwill it has developed in the EXPLORICA Mark.

52.     As a direct and proximate result of Elderhostel's violations of 15 U.S.C. § 1114, Explorica has been and will continue to be damaged.

53.     Upon information and belief, Elderhostel has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Explorica as a result of its wrongful conduct.

54.     Elderhostel's conduct is causing and will continue to cause Explorica to suffer irreparable harm and, unless Elderhostel is restrained, Explorica will continue to be so damaged, because it has no adequate remedy at law.

<u>**COUNT II**</u>
**(False Designation of Origin—15 U.S.C. § 1125(a))**

55.     Explorica repeats and realleges the allegations contained in paragraphs 1 through 54 above as if fully set forth herein.

56.     As described above, Explorica is the owner of the famous EXPLORICA Marks.

57.     The EXPLORICA Marks are distinctive and have acquired secondary meaning among consumers, who exclusively associate the EXPLORICA Marks with Explorica.

58.     Explorica's ownership and use in commerce of the EXPLORICA Marks predates the use by Elderhostel of confusingly similar word and design marks.

59.     Upon information and belief, given the fame of Explorica and its EXPLORICA Marks, Elderhostel's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the EXPLORICA Marks.

60.     Elderhostel uses its EXPLORITAS mark and stylized "E" logo in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

61.     Elderhostel's use in commerce of the EXPLORITAS mark and stylized "E" logo, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Elderhostel with Explorica and/or as to the origin, sponsorship, or approval by Explorica of Elderhostel's goods, services, or commercial activity, and will irreparably harm Explorica and the goodwill it has developed in the EXPLORICA Marks.

62.     As a direct and proximate result of Elderhostel's violations of 15 U.S.C. § 1125(a), Explorica has been and will continue to be damaged.

63.     Upon information and belief, Elderhostel has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Explorica as a result of its wrongful conduct.

64. Elderhostel's conduct is causing and will continue to cause Explorica to suffer irreparable harm and, unless Elderhostel is restrained, Explorica will continue to be so damaged, because it has no adequate remedy at law.

## COUNT III
### (Trademark Infringement—Mass. Gen. Laws ch. 110H §§ 12 and 14)

65. Explorica repeats and realleges the allegations contained in paragraphs 1 through 64 above as if fully set forth herein.

66. As described above, Explorica is the owner of a Massachusetts trademark registration No. 65,038 for the EXPLORICA Mark.

67. Explorica's ownership and use in commerce of the EXPLORICA Mark predates the use by Elderhostel of the EXPLORITAS mark. Explorica's Massachusetts registration of the EXPLORICA Mark also predates the use by Elderhostel of the EXPLORITAS mark.

68. Upon information and belief, given the fame of Explorica and its EXPLORICA Mark, Elderhostel's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the EXPLORICA Mark. Elderhostel is and was at all relevant times at least constructively aware of Explorica's prior use, ownership, and registration of the EXPLORICA Mark, and Elderhostel's conduct with respect to that mark is therefore also willful and intentional.

69. Elderhostel uses its EXPLORITAS mark in Massachusetts in connection with the sale, offering for sale, distribution, and/or advertising of its goods or services.

70. Elderhostel's use of the EXPLORITAS mark, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws ch. 110H §§ 12 and 14 in that it is without Explorica's consent and is likely to cause confusion, mistake, and/or deception with

respect to Explorica's registered trademark, all to the irreparable injury of Explorica and the goodwill it has developed in the EXPLORICA Mark.

71. As a direct and proximate result of Elderhostel's violations of Mass. Gen. Laws ch. 110H §§ 12 and 14, Explorica has been and will continue to be damaged.

72. Upon information and belief, Elderhostel has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Explorica as a result of its wrongful conduct.

73. Elderhostel's conduct is causing and will continue to cause Explorica to suffer irreparable harm and, unless Elderhostel is restrained, Explorica will continue to be so damaged, because it has no adequate remedy at law.

### COUNT IV
### (Common Law Trademark Infringement)

74. Explorica repeats and realleges the allegations contained in paragraphs 1 through 73 above as if fully set forth herein.

75. As described above, Explorica is the owner of the famous EXPLORICA Marks.

76. The EXPLORICA Marks are distinctive and have acquired secondary meaning among consumers, who exclusively associate the EXPLORICA Marks with Explorica.

77. Explorica's ownership and use in commerce of the EXPLORICA Marks predates the use by Elderhostel of a confusingly similar marks and logos.

78. Upon information and belief, given the fame of Explorica and its EXPLORICA Marks, Elderhostel's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the EXPLORICA Marks.

79. Elderhostel's use in commerce of a confusingly similar EXPLORITAS mark and stylized lower-case "E" logo, as described above, constitutes common law trademark

infringement in that it is without Explorica's consent and creates a likelihood of confusion as to source.

80.    As a direct and proximate result of Elderhostel's common law trademark infringement, Explorica has been damaged and will continue to be damaged.

81.    Upon information and belief, Elderhostel has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Explorica as a result of its wrongful conduct.

82.    Elderhostel's conduct is causing and will continue to cause Explorica to suffer irreparable harm and, unless Elderhostel is restrained, Explorica will continue to be so damaged, because it has no adequate remedy at law.

**COUNT V**
**(Trademark Dilution—Mass. Gen. Laws ch. 110H § 13)**

83.    Explorica repeats and realleges the allegations contained in paragraphs 1 through 82 above as if fully set forth herein.

84.    As described above, Explorica is the owner of the famous EXPLORICA Marks.

85.    The EXPLORICA Marks are distinctive and have acquired secondary meaning among consumers, who exclusively associate the EXPLORICA Marks with Explorica.

86.    Explorica's ownership and use in commerce of the EXPLORICA Marks predates the use by Elderhostel of a confusingly similar marks and logos.

87.    Upon information and belief, given the fame of Explorica and its EXPLORICA Marks, Elderhostel's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the EXPLORICA Marks.

88.    Elderhostel's use in commerce of the a confusingly similar EXPLORITAS mark and stylized "E" logo, as described above, constitutes common law and statutory dilution in that

it is without Explorica's consent and creates and will continue to create a likelihood of injury to Explorica's business reputation and/or a likelihood of dilution of the distinctive quality of the EXPLORICA Marks.

89.     As a direct and proximate result of Elderhostel's dilution of the EXPLORICA Marks, Explorica has been damaged and will continue to be damaged.

90.     Elderhostel's conduct is causing and will continue to cause Explorica to suffer irreparable harm and, unless Elderhostel is restrained, Explorica will continue to be so damaged, because it has no adequate remedy at law.

## <u>COUNT VI</u>
### (Unfair Competition—Mass. Gen. Laws ch. 93A)

91.     Explorica repeats and realleges the allegations contained in paragraphs 1 through 90 above as if fully set forth herein.

92.     Explorica and Elderhostel are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

93.     Elderhostel's acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

94.     Elderhostel's acts, conduct, and practices described above, including without limitation the use of the confusingly similar EXPLORITAS mark and stylized "E" logo in connection with the promotion, sale, or licensing of services in Massachusetts, constitutes unfair methods of competition and/or unfair or deceptive acts or practices, which are unlawful under Mass. Gen. Laws ch. 93A.

95.     As a direct and proximate result of Elderhostel's violations of Mass. Gen. Laws ch. 93A, Exploritas has been damaged and will continue to be damaged.

****

## PRAYERS FOR RELIEF

WHEREFORE, Explorica respectfully requests the following relief:

A.    That this Court preliminarily and permanently enjoin Elderhostel, its employees, agents, servants, and all in privity with it, from using any marks confusingly similar to the EXPLORICA Marks, including, but not limited to the EXPLORITAS mark and stylized "E" logo, or any derivatives thereof or any designs similar thereto, in commerce;

B.    That this Court award Explorica profits and compensatory damages in an amount to be determined at trial;

C.    That this Court award Explorica treble damages;

D.    That this Court award Explorica its attorneys' fees and costs; and

E.    That this Court award Explorica such other and further relief that this Court deems just and proper.

****

## JURY DEMAND

Explorica demands a trial by jury of all claims so triable.

Respectfully submitted,

EXPLORICA, INC.,

By its attorneys,

Dated: November 25, 2009

/s/ Mark S. Puzella
Mark S. Puzella (BBO No. 644850)
  *mpuzella@goodwinprocter.com*
Robert M. O'Connell (BBO No. 559667)
  *roconnell@goodwinprocter.com*
Michael T. Jones (BBO No. 661336)
  *mjones@goodwinprocter.com*
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231

## CERTIFICATE OF SERVICE

I certify that Plaintiff Explorica, Inc.'s First Amended Complaint and the accompanying exhibits were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 25, 2009.

/s/ Mark S. Puzella
Mark S. Puzella