UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11719-RGS

EXPLORICA, INC.

v.

ELDERHOSTEL, INC. d/b/a EXPLORITAS

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

February 1, 2010

STEARNS, D.J.

Plaintiff Explorica, Inc., a purveyor of educational travel services with headquarters in Boston, Massachusetts, objects to the efforts of a much larger and better known company, Boston-based Elderhostel, Inc., from re-branding itself as Exploritas, Inc. Explorica seeks a preliminary injunction under the trademark protections of the Lanham Act, 15 U.S.C. § 1051 et seq., barring Elderhostel from doing business under a trade name that Explorica contends is markedly similar to its own.[1]

The test governing the award of a preliminary injunction requires consideration of "(1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm, (3) a balancing of the relevant equities, and (4) the effect on the public interest."[2] Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995).  The moving party's

---

[1] Elderhostel registered the Exploritas mark with the Patent and Trademark Office in 2008. The Explorica mark was registered by the plaintiff in 2003.

[2] If a trademark plaintiff demonstrates a likelihood of success on the merits, irreparable harm is presumed.  See Am. Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 4 (1st Cir. 1997).

"likelihood of success is the main bearing wall of the four-factor framework." <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotations omitted).

"To prevail in an action for trademark (or service mark) infringement, the plaintiff must establish '(1) that he uses, and thereby 'owns' a mark, (2) that the defendant is using that same or a similar mark, and (3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff.'" <u>Star Fin. Servs., Inc. v. AASTAR Mortgage Corp.</u>, 89 F.3d 5, 9 (1st Cir. 1996), quoting <u>DeCosta v. Viacom Int'l, Inc.</u>, 981 F.2d 602, 605 (1st Cir. 1992). It is on the element of likelihood of confusion that the dispute is joined.

Explorica offers travel packages to educational travel groups, including round-trip air travel, transfers, meals, lodging, and tourism activities. Explorica has three primary customer pools: teachers, parents, and students. Explorica travel groups are frequently organized by teachers for the enrichment of students with the approval of the local school board. Explorica also markets travel packages directly to parents and students without teacher involvement. The median Explorica traveler is age seventeen.

Elderhostel is a not-for-profit organization that offers educational services primarily to older Americans between ages fifty and eighty. These services include educational travel tours. Elderhostel markets directly to is clientele. According to Elderhostel, only ten percent of its educational programs involve travel and the median age of its tour participants is seventy-one.

Customer perception is the key to all trademark law. "Eight factors . . . are typically used to assess the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. . . . These factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts of a case." Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 15 (1st Cir. 2004). See also Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 546 (1st Cir. 1995) (same); Star Fin. Servs.,89 F.3d at 10 (same). A plaintiff must show substantially more than a theoretical likelihood of confusion as to source, sponsorship, or affiliation, but a plaintiff is not required to show actual confusion. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996) ("[A]ny meaningful inquiry into the likelihood of confusion necessarily must replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark.").

Common means of proving confusion are survey evidence, a showing of actual confusion, and argument based on clear inferences arising from a comparison of marks and the context of their use.[3] "The harm caused by the confusion may be attributable to the defendant's appropriation of the plaintiff's goodwill (perhaps leading to sales

---

[3] Explorica has proffered several instances of actual confusion including two that involve large international air carriers.

3

diversion), or the reduction in the value of the mark by virtue of the association of the plaintiff with the defendant's own 'bad' name (so called 'reverse confusion.')." Star Fin. Servs., 89 F.3d at 9-10. Reverse confusion occurs when a small senior user is involuntarily associated with a large junior user. See 4 Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23.10 (4th ed. 2009). See also Beacon, 376 F.3d at 15-16 (commercial injury includes not only loss of sales, but also damage to goodwill and reputation among prospective purchasers and others whose confusion threatens the owners commercial interest in its mark). As is apparent, the factors bearing on customer confusion are deeply fact intensive. Given the vigorous dispute over the demographics and degree of overlap of each company's existing base, as well as the dispute over the plans of Elderhostel to expand into and compete for the demographic market currently being served by Explorica, the court is unable on the present record to conclude that Explorica's likelihood of success is established with the degree of comfort required for the draconian remedy of a grant of a preliminary injunction.[4] See Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 38 (1st Cir. 2008). Although the court recognizes its authority to hold an evidentiary hearing as an aid to a decision, see Rosario-Urdaz v.

---

[4]With respect to the latter dispute, Elderhostel argues that the First Circuit has never accepted the "natural zone of expansion" doctrine argued by Explorica. This is true, but the First Circuit has not explicitly rejected it or had the opportunity to assess it in a modern context. Compare Raxton Corp. v. Anania Assocs., Inc., 635 F.2d 924, 930 (1st Cir. 1980) (criticizing aspects of the doctrine in dicta). Since Raxton, the doctrine has been adopted by other Circuits, among them the Ninth, see Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 634 (9th Cir. 2005), and the Second, see Savin Corp. v. Savin Group, 391 F.3d 439, 459-460 (2d Cir. 2004). This case on a fully developed record offers the First Circuit a useful opportunity to revisit the issue.

Rivera-Hernandez, 350 F.3d 219, 223 (1st Cir. 2003), both for the reasons explained in footnote four and the court's recognition of the large financial stake each side has in the outcome of the infringement issue, it believes that the entire matter is best resolved by a jury.

## ORDER

For the foregoing reasons, plaintiff's Motion for Preliminary Injunction is DENIED without prejudice. The case will be set for an expedited trial before a jury commencing 9:00 a.m. on February 16, 2010.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE