IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXPLORICA, INC.<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ELDERHOSTEL, INC.<br>d/b/a EXPLORITAS,<br><br>　　　　Defendants. | Civil Action No. 09-11719-RGS |

## ELDERHOSTEL'S TRIAL MEMORANDUM

Elderhostel will present evidence at trial that its use of its own federally registered trademark EXPLORITAS® does not infringe Explorica's rights in the EXPLORICA® mark. As Explorica cannot meet its burden to show a likelihood of commercially significant confusion between the marks, judgment should enter for Elderhostel.[1]

**I.　THERE IS NO LIKELIHOOD OF CONFUSION AND THEREFORE NO INFRINGEMENT.**

In order to show trademark infringement Explorica must show that Elderhostel's use of its own federally registered trademark would cause "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). "[C]onfusion resulting from the consuming public's carelessness, indifference, or ennui

---

[1] A motion is pending to determine the scope of the trial. Elderhostel has moved for summary judgment of no monetary damages or, in the alternative, bifurcation of that issue (as well as the issue of willfulness given the emergency trial date and that Elderhostel would suffer extreme prejudice by being forced to defend a damages case when there has been no damages discovery or time to engage in such discovery, whether by fact or expert witnesses. Indeed, with trial one week away, Explorica has not even disclosed what its damages case consists of.

1888663.2

will not suffice." Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996).

The First Circuit typically assesses eight factors when determining likelihood of confusion: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." See Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981); accord Boston Duck Tours, 531 F.3d at 10.

Applying these eight factors, it is clear that a reasonably prudent purchaser exercising ordinary care would not be confused.

A. **The Services Offered and Customers Served By the Parties Are Different.**

1. The Parties' Customers Are Different.

The parties' respective customers could not be more different. Elderhostel is geared toward elder adult participants, typically older adults between 65-75 although it offers special programs for those in their 80s as well as programs for participants as young as 50.[2] 97.7 % of Elderhostel travelers are above age 50. The median age of an Elderhostel participant is 71. Explorica serves traveling student groups, led by teachers and chaperones. Most of Explorica's travelers are teenagers, and the rest are mostly chaperones of schoolchildren.

Explorica's customers are middle school, junior high, or high school students and Elderhostel's customers are older adults. Anyone who spends even the smallest amount

---

[2] Elderhostel materials sometimes refer to "younger" participants. At Elderhostel, "younger" means ages 55-69.

of time considering the companies will recognize the completely different customer bases. No customer looking to participate in one would accidentally participate in the other.

2. The Parties' Services Are Different.

Explorica is a for-profit company that organizes trips for pre-formed groups of schoolchildren. By contrast, Elderhostel is a non-profit organization that offers educational programs for older adults. Explorica's trips are organized by school boards or teachers leading pre-organized groups of students accompanied by chaperones, while Elderhostel's programs are sold to the individual participants themselves. Only 10% of Elderhostel's programs involve travel. All of Explorica's programs involve travel.

Nevertheless, Explorica asserts that the parties' respective services are "identical" because they both involve "educational travel services." Courts deciding trademark cases repeatedly reject such broad brush strokes to compare markets and require a more detailed analysis of the respective goods, services, and customers. See Riverbank, Inc. v. River Bank, 625 F. Supp. 2d 65, 72 (D. Mass. 2009) (disregarding broad characterization of parties' services as "financial services" and finding them dissimilar).[3] Specifically, courts have found it inappropriate to lump two businesses under the category of "travel," holding that the particular type of travel services must be considered. Windsor, Inc. v. Intravco Travel Centers, Inc., 799 F. Supp. 1513, 1523 (S.D.N.Y. 1992) (finding no

---

[3] See also Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993) (no likelihood of confusion even though both goods were broadly considered "gardening equipment."); Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983) ("[Plaintiff's] registered mark does not allow it to pre-empt the whole broad field of health care products."); Pignons, 657 F.2d at 487-88 ("Both the products in this case are single lens reflex cameras; otherwise they have little in common."); Mejia and Associates, Inc. v. IBM Corp., 920 F. Supp. 540, 548 (S.D.N.Y. 1996) (argument that both parties offer "educational services" is "so broad as to be meaningless for purposes of determining that the products are proximate.").

likelihood of confusion between a tour operator of prepackaged tours and one that designs custom tours).

The parties are simply not competitors and there is no evidence to suggest otherwise.

### 3. Explorica Cannot Rely on A "Natural Zone of Expansion" Theory.

Explorica intends to rely on the "natural zone of expansion theory." This theory has not been recognized by the First Circuit, and in fact has been criticized as it would "involve the obvious practical difficulties of defining the 'natural expansion path' of a business, [and] allow trademark owners to 'monopolize markets that their trade had never reached.'" Raxton Corp. v. Anania Assoc., Inc., 635 F.2d 924, 930 (1st Cir. 1980). To the extent the doctrine has any application, it applies only to geographic expansion and not expansion into an entirely new service area, as alleged here. Id. at 925.[4]

Further, Explorica cannot show the required concrete steps taken to avail itself of this theory.

### B. Prospective Purchasers Are Careful And Unlikely to Be Confused.

The services in question take many months to evaluate and purchase and also cost hundreds if not thousands of dollars, adding to the level of care taken by the consumers, and lessening the already slim likelihood that any would be confused. Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193, 194 (1st Cir. 1980) ("The greater the value of an article the more careful the typical consumer can be expected to be.") quoting

---

[4] Other circuits have similarly limited the doctrine to situations where the trademark owner evidences "concrete evidence of expansion plans." Survivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 634 (9th Cir. 2005); see Savin Corp. v. Savin Group, 391 F.3d 439, 460 (2d Cir. 2004) (bare assertions regarding expansion insufficient even to create a disputed issue of fact); "there is a need for a strong possibility of expansion into competing markets for this factor to weigh in favor of a finding of infringement." M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005) (emphasis in original) (declining to apply doctrine even with some sales in new market). Explorica lacks any evidence of concrete efforts made to reach adult learners or the senior citizen market.

4

McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979); Pignons, 657 F.2d at 489 ("those most likely to buy an expensive, sophisticated camera in a specialty camera store are also least likely to be confused by any similarity in…marks."). Under similar circumstances, courts find the customers unlikely to be confused:

> Here, the plaintiff sells relatively expensive tours…to consumers who, on average, are affluent and well-educated. Defendant, however, sells its services primarily to travel professionals, e.g., directors of student exchange organizations, travel agents, and group leaders of private organizations. Thus, the court concludes that both plaintiff and defendant sell their services to consumers who are quite sophisticated with regard to the aspects of travel in which each company specializes.

Windsor, Inc. v. Intravco Travel Centers, Inc., 799 F. Supp. 1513, 1526 (S.D.N.Y. 1992) (finding no likelihood of confusion).

### C.    The Respective Channels of Trade and Advertising Are Different.

The channels of trade and advertising of the parties are also different and Explorica cannot cite any specific examples of overlap between the two.  Explorica must show specific examples of overlap, not simply that both parties engage in general marketing such as using direct mailings, catalogues, and the Internet.  U.S. Conference of Catholic Bishops v. Media Research Ctr., 432 F. Supp. 2d 616, 627-28 (E.D. Va. 2006) (declining to find similar channels of trade simply because both parties use Internet marketing).  Explorica has no evidence of advertising overlap.

### D.    The Marks Are Different.

Although they share a common prefix, the parties' marks are sufficiently different such that prudent purchasers exercising ordinary care (which in this industry is high), would not be confused.

1. A Descriptive and Widely Used Prefix Is Given Little Weight.

"[A] trademark infringement finding . . . cannot be based on the use of a generic or descriptive term." Am. Cyanamid Corp. v. Connaught Labs., Inc., 800 F.2d 306, 308 (2d Cir. 1986) (finding no likelihood of confusion between HibVAX and HIB-IMUNE); see also Boston Duck Tours, 531 F.3d at 25 ("Allowing 'duck tours' to largely drop out of the analysis" of the BOSTON DUCK TOURS mark); Bada Co. v. Montgomery Ward, 426 F.2d 8, 11 (9th Cir. 1970) ("word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller.").

A term widely used in a given industry is given little, if any, weight in determining similarity. "[T]he more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer." Colt Defense LLC v. Bushmaster Firearms, Inc., 486 F. 3d 701, 706 (1st Cir. 2007) (noting that "at least fifteen gun manufacturers use M4 to describe their products"); Boston Duck Tours, 531 F.3d at 19.

The use of words with "explor" in them is so commonplace in the travel industry and in the field of education, that this generic root simply cannot, standing alone, be expected to distinguish these hundreds of companies from each other. Accordingly, this generic root should be given very little weight in comparing the parties' marks. Boston Duck Tours, 531 F.3d at 19. Greater attention must, instead, be given to the suffix (CA versus TAS), the fonts, colors, styles, logos and tag-lines with which the marks are used, and the very different demographic groups targeted.

2. Substantially Different Suffix is Distinguishing.

There is no likelihood of confusion where marks differ even if only in a suffix, even where the parties used the marks for much more similar products or services than is the case here. For example, in <u>Sarah Coventry, Inc. v. Sardelli & Sons, Inc</u>, the parties sold "essentially identical jewelry" under the marks SARAH and SARDE. 526 F.2d 20, 21, 22 (1st Cir. 1975). Although the marks differed only in suffix, the First Circuit a finding of no likelihood of confusion because "the last two [letters were] substantially different." <u>Id.</u>; <u>see</u> <u>also</u> <u>Pignons</u>, 657 F.2d at 492 (affirming summary judgment of no likelihood of confusion between ALPA and ALPHA where both marks were used with single-lens reflex cameras); <u>Riverbank</u>, 625 F. Supp. 2d at 76 (no likelihood of confusion between RIVERBANK and RIVER BANK where both used for financial services).[5] As in <u>Sarah Coventry</u>, the suffixes of the parties' respective trademarks are "substantially different" from one another. 526 F.2d at 22. The suffix of Elderhostel's mark is "TAS" while the suffix of Explorica's mark is "CA." The two suffixes do not look or sound like one another.

### 3.    The Parties' Logos Foreclose Any Possibility of Confusion.

In considering mark similarity the trier must consider "the total effect of the designation, rather than a comparison of individual features." <u>Pignons</u>, 657 F.2d at 487. Nearly all of the parties' customers will first learn about trips through a website or a

---

[5] Other courts routinely find or affirm findings of no likelihood of confusion in similar circumstances, even where the parties used the marks for similar products or services. See <u>Am. Cyanamid</u>, 800 F.2d at 308 (HibVAX does not infringe HIB-IMUNE because dissimilarity of suffixes offsets identity of prefixes); <u>Community of Roquefort v. Santo</u>, 443 F.2d 1196, 1199 (C.C.P.A. 1971) (finding no likelihood of confusion between ROQUEFORT and ROQUITAL where both marks used for salad dressing); <u>Lever Bros. Co. v. Babson Bros. Co.</u>, 94 U.S.P.Q. 161, 164 (C.C.P.A. 1952) (finding no likelihood of confusion between SURF and SURGE where both marks used for detergents); <u>Lebow Bros., Inc. v. Lebole Euroconf S.p.A.</u>, 503 F. Supp. 209, 213 (E.D. Pa. 1980) (finding no likelihood of confusion between LEBOW and LEBOLE where both marks used for clothing).

catalog. Thus, before making a trip, nearly all customers will have first viewed one of the logos, which look nothing alike:





Further, the marks as they appear on the parties' marketing materials, websites, and catalogs look nothing alike:

 

"[O]therwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer." Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996); Pignons, 657 F.2d at 487 (same); Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 3 (1st Cir. 1993) (finding that "the similarity is diluted by the frequent use of…logos").

The total effect of Explorica's and Elderhostel's marks could hardly be more different from one another. No one viewing these logos would ever confuse one with the other.

    4.    Elderhostel's Federal Registration of EXPLORITAS Is <u>Prima Facie Evidence of Elderhostel's Right to Use Its Mark</u>.

Elderhostel's EXPLORITAS® mark is federally registered after having gone through a rigorous examination process by trained examiners at the Patent and Trademark Office ("PTO"). Elderhostel's registration of the EXPLORITAS® mark is prima facie evidence of Elderhostel's "exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. §1057(b). In considering a trademark application, the PTO is required to compare the applicant's mark to existing marks, and will only grant the mark if it is not likely to cause confusion with existing marks. <u>See</u> 15 U.S.C. 1052(d). The PTO's decisions regarding likelihood of confusion are entitled to "great weight." <u>M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha</u>, 250 F. Supp. 2d 91, 99 (E.D.N.Y. 2003).

During prosecution of Elderhostel's EXPLORITAS® mark, the examiner searched for all marks in the relevant classes containing "EXPLOR." (O'Neill Decl. Ex. 7). The examiner's search thus included EXPLORICA®, but the examiner did not even cite EXPLORICA® against the EXPLORITAS® mark. The examiner's decision not to even cite EXPLORICA® against EXPLORITAS® supports the conclusion that the two marks are not confusingly similar. <u>See</u> <u>Reed-Union Corp. v. Turtle Wax, Inc.</u>, 869 F. Supp. 1304, 1310 (N.D. Ill. 1994).

E.     **There Is No Actual Customer Confusion.**

Misdirected mail or email does not establish any "commercially relevant" confusion, i.e., that the company "lost profits or lost customers" as a result of the confusion, which Explorica must show. Riverbank, 625 F. Supp. 2d at 74 citing Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F. 3d 8, 17 (1st Cir. 2004). Further, since Elderhostel just changed its name a few months ago, it is not surprising that a tiny fraction of its 100,000 to 150,000 annual customers might initially accidentally go to a wrong website. Such "temporary confusion" is not sufficient to weigh in favor of a likelihood of confusion unless the plaintiff can show that the "temporary confusion…had any effect whatever on the ultimate decision of a purchaser whether to [purchase services]." Boston Duck Tours, 531 F.3d at 25 quoting Astra Pharm. Prods. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983) and citing Lang v. Retirement Living Publ'g Co., Inc., 949 F.2d 576, 582-83 (2d Cir. 1991). This kind of confusion, where "consumers will realize they are at the wrong site and go to an Internet search engine to find the right one – is not substantial enough to be legally significant." Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 125 (D. Mass. 1999); Teletech Customer Care Management (Cal.), Inc. v. Tele-Tech Co., 977 F. Supp. 1407, 1414 (C.D. Cal. 1997) ("[A]n initial confusion on the part of web browsers…is not cognizable under trademark law.").

Further, 3-4 wayward communications does not constitute sufficient confusion to support a likelihood of confusion. See Riverbank, 625 F. Supp. 2d at 73-74 (finding no likelihood of confusion despite eighteen documented instances of confusion).

10

### F.     Elderhostel Had No Intent To Infringe Explorica's Mark.

In order to show bad-faith intent, the plaintiff must show that the defendant had an "intent to deceive" consumers or to "benefit from [plaintiff's] reputation." Pignons, 657 F.2d at 491.  Where the parties "are not competitors and do not offer the same services, it would not be reasonable to infer that [defendant] intended to 'reap what it had not sowed' or get a 'free ride.'" Riverbank, 625 F. Supp. 2d at 75.  Here, Elderhostel's decisionmakers did not even know of Explorica's existence at the time they selected EXPLORITAS®.  Moreover, before adopting the EXPLORITAS mark, they not only applied for their own registration from the United States Patent and Trademark but waited until a full year after the PTO granted it a Notice of Allowance before actually rolling out the mark to the public.

### G.     EXPLORICA is A Weak Mark.

Significant third-party use of a mark or a portion of a mark, such as "explor," weakens its strength and decreases the likelihood of confusion associated with its use. First Savings Bank v. First Bank System Inc., 101 F.3d 645, 653-54 (10th Cir. 1996) ("The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark.").  "When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks." First Savings Bank, 101 F.3d at 655; accord Sun Banks v. Sun Federal Sav. & Loan Assoc., 651 F.2d 311, 316 (5th Cir. 1981).

Explorica's mark shares the term "explor" with hundreds of other companies (some with federal trademark registrations), in fields that include both travel and education – far more than the mere dozens typically used to establish that a field is

11

crowded and a mark accordingly is weak. See Pignons, 657 F.2d at 491 (finding no likelihood of confusion where mark in question shared a root with 32 other federal and state registrations); Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549, 553 (1st Cir. 1948) (finding mark weak where root was shared with forty other registrations). Other registered trademarks include EXPLORA®, EXPLORATIONS®, and EXPLORIST®, and website addresses include EXPLORITA.COM.

Explorica may not monopolize the use of "explor-" as a root, because a mark that is "merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller." Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir. 1970); see also Boston Duck Tours, 531 F.3d at 23 (stating that the mark "BOSTON DUCK TOURS" is conceptually weak since "Boston" is a descriptive term and "Duck Tours" is a generic term). Because of this descriptive effect, hundreds of other travel companies besides Explorica have marks or website addresses that begin with "explor." See Gift of Learning Found., 2001 U.S. Dist. LEXIS 25301, at *22-24 (S.D. Fla. Oct. 29, 2001) (finding that mark was descriptive based on evidence of numerous third-parties using variations of the terms contained in plaintiff's mark and evidence of seven third-parties using some combination of the terms). Explorica may not now appropriate the root "explor" as its exclusive trademark. See Bada, 426 F.2d at 11.

### H.     Summary of Pignons Factors

After consideration of the Pignons factors, there is no likelihood of confusion.

### I.     Explorica Can Show No Commercially Relevant Injury

To support an action for trademark infringement the mark holder must show that the confusion "could inflict commercial injury." Beacon Mut. Ins. Co. v. OneBeacon Ins.

12

Group, 376 F. 3d 8, 15 (1st Cir. 2004). Explorica cannot do so. It relies only on vague notions of injury, none of which rise to the level of commercially relevant.[6]

## II. EXPLORICA'S CLAIMS UNDER MASSACHUSETTS LAW ARE COEXTENSIVE WITH ITS FEDERAL ONES.

Explorica's state claims add nothing to their federal counterparts. An infringement claim under Massachusetts law is subject to the same analysis as a federal law claim. Astra Pharm. Prods, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983); Pignons, 657 F.2d at 486-87.

## III. EXPLORICA IS NOT ENTITLED TO DAMAGES.

As Elderhostel has laid out in its motion for summary judgment or bifurcation and in the reply memorandum being filed today, damages should not be part of the upcoming trial. Explorica has no evidence of actual damages and trial is one week away, yet discovery on damages has not even begun. It would subject Elderhostel to extreme prejudice to force it to respond to a phantom damages case in the amount of time available, particularly since Explorica has never disclosed the damages figure it is seeking, nor how it purports to get there, and further since Elderhostel has had no opportunity to vet or test through further discovery and expert analysis any figures Explorica plans to put forth.

As the First Circuit stated in Aktiebolaget Electrolux v. Armatron Intern., Inc., to obtain monetary damages, a plaintiff must establish at least one of the following:

---

[6] As Explorica's mark is not famous, and it dropped its federal dilution claim, it cannot base its claim on vague notions of "harm to the mark." (D.I. 19.)

13

> 1) a plaintiff seeking damages must <u>prove actual harm</u>, such as the diversion of sales to the defendant;
>
> 2) a plaintiff seeking an accounting of defendant's profits must <u>show that the products directly compete</u>, such that defendant's profits would have gone to plaintiff if there was no violation;
>
> 3) the general rule of direct competition is loosened if the defendant <u>acted fraudulently or palmed off inferior goods</u>, such that actual harm is presumed; and
>
> 4) where defendant's <u>inequitable conduct</u> warrants bypassing the usual rule of actual harm, damages may be assessed on an unjust enrichment or deterrence theory.

999 F. 2d 1, 5 (1st Cir. 1993) (emphasis added). Explorica can establish none of these.

To recover damages, a plaintiff must present evidence of lost sales and cannot rely on unsubstantiated statements alleging vague notions of harm. <u>See</u> <u>id.</u> at 6 (refusing to credit unsubstantiated statements of plaintiff's CEO and finding no evidence of lost sales). Even instances of actual confusion are not sufficient to show actual harm, as the plaintiff must show that it "actually lost sales due to that confusion." <u>Id.</u> For example, in <u>Aktiebolaget</u>, the First Circuit held that the plaintiff had not shown any actual harm despite plaintiff's survey showing some confusion since the plaintiff did not show that it "actually lost sales due to that confusion." <u>Id.</u>

Explorica has not provided any evidence that is has suffered monetary harm, such as lost sales, from Elderhostel's use of the EXPLORITAS mark. Absent any lost sales, Explorica has not suffered any actual harm. <u>See id.</u> Explorica professed harm, such as "[c]onfusion in the marketplace" (which is a factor of likelihood of confusion, not a compensable harm), or time spent by Explorica employees responding to three or four misdirected customers is de minimis and not compensable by a damage award. <u>See id.</u>

### A.     **Explorica Cannot Recover Profits.**

In the First Circuit, to obtain an accounting of a defendant's profits, plaintiff must satisfy one of the following: (1) "plaintiff seeking an accounting of defendant's profits must show that the products <u>directly compete</u>, such that defendant's profits would have gone to plaintiff if there was no violation"; (2) "the general rule of direct competition is loosened if the <u>defendant acted fraudulently or palmed off inferior goods</u> , such that actual harm is presumed"; or (3) "where defendant's <u>inequitable conduct</u> warrants bypassing the usual rule of actual harm, damages may be assessed on an unjust enrichment or deterrence theory." <u>Aktiebolaget</u>, 999 F.2d at 6.[7]  Explorica cannot meet any of these three criteria.

Further, Elderhostel is a non-profit organization who has no profits to recover. <u>See</u> <u>Rd. Dawgs Motorcycle Club of the United States, Inc. v. "Cuse" Rd. Dawgs, Inc.</u>, 2009 U.S. Dist. LEXIS 105524, at *80 (N.D.N.Y Nov. 12, 2009) ("Because Plaintiffs are a non-profit organization, they are unable to assert against Defendants any specific claim of lost sales or profits.").

### B.     **Explorica Is Not Entitled To Costs.**

The award of costs is "subject to the principles of equity."  15 U.S.C. § 1117(a). For the reasons expressed above, Explorica is not entitled to costs.  Elderhostel's selection of its EXPLORITAS trademark has not caused any actual harm to Explorica and Elderhostel selected its mark in good faith, as it would have nothing to gain from the confusion of the parties' customers.  Principles of equity do not justify an award of costs to Explorica, and Elderhostel is entitled to summary judgment of no costs to Explorica.

---

[7] <u>See also</u> 5 MCCARTHY ON TRADEMARKS § 30:89 at 30-192 (4th Ed. 2009) (courts "refuse to allow an accounting [of profits] where the defendant apparently acted in a good faith belief that it was entitled to use the contested mark.") (citing cases).

### C.     This is Not An Exceptional Case.

Under federal trademark law, attorneys fees are allowed only in an "exceptional case." 15 U.S.C. § 1117(a)(3). To explain the meaning of "exceptional," courts have looked to the statutory history, which states that attorneys' fees may be appropriate in circumstances where the acts of infringement were "malicious, fraudulent, deliberate, or willful." Tamko Roofing Products v. Ideal Roofing, 282 F.3d 23, 31 (1st Cir. 2002). They were not here.

In determining whether a case is exceptional, the First Circuit considers the following factors: "the area of law is unclear and defendants might reasonably think they did not infringe; there is a close legal question as to whether there is any trademark violation; defendant had no intent to deceive or confuse the public; the defendant made a concerted effort to create a non-infringing mark; the plaintiff suffered no actual damage." Id. at 32-33 (citations omitted). Applying these factors, this is clearly not an exceptional case.

Elderhostel reasonable belief that it does not infringe Explorica's trademark is grounded in a litany of salient facts: (1) Elderhostel has a federal registrations of its own mark that creates a presumption of validity. M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha, 250 F. Supp. 2d 91, 99 (E.D.N.Y. 2003) (holding that the PTO's decisions regarding likelihood of confusion are entitled to "great weight"). Indeed, Elderhostel did not roll out its new mark until well after obtaining a Notice of Allowance from the U.S. Patent and Trademark office establishing its right to the mark and further establishing that the Examiner had found no likelihood of confusion with previously-registered marks such as EXPLORICA. (2) Hundreds of companies in the travel industry have marks

containing the generic root "explor-" (e.g., EXPLORA, IEXPLORE, EXPLORATIONS, and EXPLORITA), such that Elderhostel has a reasonable basis to believe that it also has the right to use a mark containing "explor." First Savings Bank v. First Bank System Inc., 101 F.3d 645, 653-54 (10th Cir. 1996) ("When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks."). (3) There are also enormous differences between the parties' businesses: the ages of its customer differ by 50 years, Elderhostel's programs focus primarily on classroom education, with only a small percentage (10%) involving travel and even then not requiring that the travel portion be purchased through Elderhostel; while Explorica is a group travel company that provides travel as the essential component of all its offerings (most of which are overseas, while most of Elderhostel's are domestic). See Windsor, Inc. v. Intravco Travel Centers, Inc., 799 F. Supp. 1513, 1523 (S.D.N.Y. 1992) (finding no likelihood of confusion between a tour operator of prepackaged tours and one that designs custom tours). And (4) the parties' logos, websites, and catalogs are so different from one another that no one could confuse the two parties. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981) (stating that courts must consider "the total effect of the designation, rather than a comparison of individual features").

      As explained above, Elderhostel had no intent to confuse or deceive the public, as it does not want and would turn away Explorica's customers. Elderhostel never has and never will provide a trip for high school students. Also as explained above, Explorica has not shown that it has suffered any actual damages. Explorica has not articulated any

harm from Elderhostel's use of the EXPLORITAS mark, and Explorica has not lost a single customer to Elderhostel.

In <u>Visible Systems</u>, the First Circuit affirmed the district court's holding of no exceptional case where "[defendant] had a good faith belief that it was not in competition with [plaintiff], that the evidence that [plaintiff] suffered actual damage was indirect, and that [defendant's] behavior did not rise to the level of deliberate and willful conduct." 551 F.3d at 82.  For at least the same reasons, this case is also not exceptional.

Respectfully submitted,

ELDERHOSTEL, INC.

By its attorneys,

Dated:  February 8, 2010

/s/ Michael A. Albert
Michael Albert, BBO #558566
malbert@wolfgreenfield.com
Allen Rugg, BBO #674484
arugg@wolfgreenfield.com
Jeffrey C. O'Neill, BBO #663254
joneill@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: 617.646.8000
Fax: 617.646.8646

Ilan N. Barzilay, BBO # 643978
ibarzilay@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA  02210
Tel: 617.946.4800
Fax: 617.946.4801

## **CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                              /s/ Michael A. Albert

BO1 16018620.1