# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EXPLORICA, INC.

          Plaintiff,

   v.

ELDERHOSTEL, INC.
d/b/a EXPLORITAS,

        Defendant.

Civil Action No.  09-11719

## PLAINTIFF EXPLORICA, INC'S TRIAL MEMORANDUM

James R. Rehnquist (BBO No. 552602)
Mark S. Puzella (BBO No. 644850)
R. David Hosp (BBO No. 634091)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-123

Pursuant to the Court's January 26, 2009 Order, Plaintiff Explorica, Inc. ("Explorica") submits this Trial Memorandum to identify potential legal issues likely to be raised at trial. Also attached pursuant to the Court's order are:

- Exhibit A – Explorica's requests for jury instructions;

- Exhibit B – Explorica's proposed verdict questions;

- Exhibit C – Explorica's proposed questions for *voir dire* examination; and

- Exhibit D – Explorica's statement summarizing the principal claims and defenses.

## BACKGROUND

Explorica has used the distinctive service mark EXPLORICA (the "Mark") to identify itself and its educational travel services continuously since 2000. Explorica has invested tens of millions of dollars establishing, promoting, and protecting the EXPLORICA brand and, as a result, it has developed substantial goodwill in the Mark. Defendant Elderhostel, Inc. ("Elderhostel"), a much larger competitor in the educational travel space, recently rebranded its travel services from ELDERHOSTEL to EXPLORITAS, a name that is virtually identical to EXPLORICA. Explorica and Elderhostel provide the same services, have the same purchasers, and market their services in the same way. What's more, Explorica has experienced several instances of actual confusion. For these reasons, Explorica is entitled to an injunction preventing Elderhostel from using the EXPLORITAS Mark and money damages in the form of (i) Elderhostel's profits and (ii) corrective advertising. In addition, Elderhostel's conduct is knowing and willful and constitutes an unfair business practice a violation of M.G.L. 93A, which entitles Explorica to damages and attorneys' fees.

## FORESEEABLE DISPUTES CONCERNING ISSUES OF LAW

The parties agree that due to Explorica's incontestable federal trademark registration, issues of ownership, protectability, and descriptiveness are not at issue. The only liability issues concerning the trademark claims relate to the established likelihood of confusion factors: (1) the similarity of the marks; (2) the similarity of the services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 15 (1st Cir. 2004). Based on the parties' preliminary injunction papers, Explorica anticipates legal disputes on several of these factors.

Finally, Explorica anticipates a dispute concerning Explorica's entitlement to money damages.

## I.     TRADEMARK INFRINGEMENT

### A.     Similarity Of The Marks

In considering the similarity of trademarks, the fact finder must take into account the "total effect" of the marks, examining sight, sound, and meaning, and taking the context of the use into consideration. *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 44 (D. Mass. 1995). Elderhostel does not contest this legal standard, but asserts that the USPTO allowed its registration and found no likelihood of confusion and that its determination is afforded great weight. The USPTO's determination is entitled to no weight in this case. *Trimark USA, Inc. v. Performance Group Co., LLC*, No. 09-11222, 2009 WL 3524707, at *7 (D. Mass. Oct. 21, 2009) (declining to consider the fact that the examiner approved publication of junior user's marks as evidence that the marks were not substantially similar to senior user's marks, and finding that the marks were substantially similar). The *Trimark* Court observed, "[i]ndeed, even where the

record shows that an examining attorney has explicitly considered a prior mark, we have held

that an initial PTO determination . . .  may be considered [but] ***need not be given weight*** when

the PTO attorney ***did not review all the evidence*** available to the District Court." *Id.* (emphasis

added) (*quoting Kos Pharm., Inc. v. Andrx Corp., 3*69 F.3d 714 (3d. Cir. 2004);  *see also A & H

Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221 (3d Cir.2000).  The USPTO

did not have the evidence presented in this case, so its determination should be entitled to no

weight.

Elderhostel asserts that the USPTO's determination is entitled to great weight.  However,

as set forth above and in Explorica's Motion in Limine, that is not the law in this district.

Further, the cases cited by Elderhostel relate only to the USPTO's issuance of a § 2(d) refusal,

not an acceptance of an application.  *See M & G Elec. Sales Corp. v. Sony Kabushiki Kaisha*,

250 F.Supp. 2d 91, 98 (E.D.N.Y. 2003) ("Where, as here, the PTO has declined to register a

defendant's mark because of the plaintiff's registration, *that refusal* 'is entitled to great weight'

on the issue of likelihood of confusion in a later trademark action." (emphasis added) (citing

cases)).  A refusal by the PTO to register a mark means that the Examiner explicitly considered

both marks, refused the registration, and was unconvinced by applicant's arguments to the

contrary.  On the other hand, an Examiner's failure to refuse registration does not imply that the

Examiner spent any amount of time actually considering whether the marks were similar.

### B.    The Similarity Of The Services

Explorica asserts that the parties services are related.  All the law requires for a finding in

favor of Explorica on the this factor is that the services are related, they do not need to be

identical.  *See Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 546 (1st Cir. 1995) (hoof

care products); *Aura Commc'ns, Inc. v. Aura Networks, Inc.*, 148 F. Supp. 2d 91, 95 (D. Mass.

2001) (wireless communications environment); *Northern Light Tech., Inc. v. Northern Lights*

*Club*, 97 F. Supp. 2d. 96, 111 (D. Mass. 2000) (web-based navigation services); *Pub. Svc. Co. of New Mexico v. Nexus Energy Software, Inc.*, 36 F. Supp. 2d 436, 439 (D. Mass. 1999) (energy information services); *Jordache Enter., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 517 (S.D.N.Y. 1993) (greater likelihood of confusion where the junior user's product competes for a slightly different market segment than the senior user). Elderhostel does not dispute this legal principle as such; rather, it cites cases where the fact finder did not find the services sufficiently related for the factor to weigh in favor of the senior user. That is not a legal dispute, but a question for the jury.

If the jury finds that the parties do not offer related services today, they are entitled to consider whether the parties are likely to offer related services in the future. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 874 (2d Cir. 1986) (where trademark owner shows intent to enter the market of the alleged infringer, such a showing is indicative of future likelihood of confusion as to source and the more closely the products compete, the shorter the gap is to bridge).

## C.    The Relationship Between The Parties' Channels Of Trade And Advertising

Explorica asserts that the parties' channels of trade and advertising are the same. The law provides that where both parties "compete for [the] same customers and advertise in the same media to reach the same customers," then there is a strong likelihood that these factors cut in favor of the plaintiff. *See Copy Cop*, 908 F. Supp. at 45. Elderhostel asserts that the parties must appear in the same catalog for the media to be considered for purposes of whether the parties use the same channel of marketing. The law does not require that the parties appear in the same catalog. *Trimark*, 2009 WL 3524707, at *9 (finding overlapping marketing channels where both companies "advertise their services via *their* websites and catalogs." (emphasis added). To the extent the parties' marketing is not identical, all the law requires for this factor to weigh in favor

of Explorica is that the parties' marketing overlap.  *See id.* (granting preliminary injunction and finding "to the extent that the marketing and purchasers are not identical, there is 'overlap in these categories that could increase the risk of confusion.'" (quoting *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 55-56 (D. Mass. 1990)).

Explorica asserts that the parties also service the same customers and that, to the extent their customers are not entirely the same, they overlap to a significant degree.  The law only requires that the parties' customers overlap for this factor to weigh in favor of Explorica.  *See Trimark*, 2009 WL 3524707, at *9 (granting preliminary injunction and finding "to the extent that the marketing and purchasers are not identical, there is 'overlap in these categories that could increase the risk of confusion.'" (quoting *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 55-56 (D. Mass. 1990)); *Tamko Roofing Prods. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 35 (1st Cir. 2002) ("Under [First] circuit precedent, there may be infringement, as well as an accounting of defendant's profits, *even when most of the products are not in competition*, if there is evidence, as there was here, of likelihood of confusion." (emphasis added)).

Elderhostel does not dispute this legal standard, rather it argues that there is no overlap in the parties' customers which of course is a factual, not legal, dispute.

### D.     Evidence Of Actual Confusion

Explorica identifies several instances of actual confusion and asserts that actual confusion is the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion.  *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 18 (1st Cir. 2004); *see also Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006) (actual confusion is often deemed the best evidence of possible future confusion, but proof of actual confusion is not essential to finding likelihood of confusion). Elderhostel asserts that the specific instances of actual confusion identified are not legally

relevant because they do not evidence lost profits or lost sales. This is not the law; confusion among non-purchasers, suppliers, and the public constitutes relevant actual confusion. *See Beacon Mut.*, 376 F.3d at 15-16 (discussing and listing cases).

Elderhostel characterizes the confusion as "temporary confusion" and cites *Boston Duck Tours*, 531 F.3d 1, 25 (1st Cir. 2008) for the proposition that such confusion is not actionable. Opp. at 15. The quotation cited does not appear anywhere in the case, but does appear in *Astra Pharm. Prods. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983). *Astra* is distinguishable from the current case because (among other things, *see supra* n. 3) the confusion at issue in *Astra* was not in the mind of relevant persons and resulted in no harm to Plaintiff's goodwill. *Id.* at 1207, 1209. ([A]ppropriation of [plaintiff's] goodwill and reputation by [defendant was] a virtual impossibility.") To the extent that language in *Astra* suggests that temporary confusion is *never* actionable, as Elderhostel argues, that proposition has been foreclosed. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp.*, 376 F. Supp.2d 251, 254-55 (D.R.I. 2005) (*citing Beacon Mut.*, 376 F. 3d at 10). Elderhostel's statement that *Riverbank* requires "lost profits or lost customers" in order to establish "commercially relevant confusion" (Opp. at 14) is patently false. *See Riverbank, Inc. v. River Bank*, 625 F. Supp. 2d 65, 74 (D. Mass. 2009).

Elderhostel has stated that it intends to offer a motion in limine to exclude Explorica's evidence of actual confusion. To the extent that Explorica argues that the evidence of actual confusion is hearsay, courts have consistently ruled that such evidence is *not* hearsay, because it is offered not for the truth of the matter asserted but for the state of mind of the declarants (i.e. that he was confused about the origin of goods/services). *See, e.g., Boston Athletic Ass'n. v. Sullivan,* 867 F.2d 22, 31 (1st Cir. 1989) (holding that affidavit from retailer concerning

confusion of customers, was not hearsay, because it was not offered for the truth of the matter asserted but rather to show that "the declarants, a member of the public," believed that they were officially authorized." (emphasis in original)); *CCBN.com, Inc. v. c-call.com, Inc.*, 73 F.Supp.2d 106, 113 (D. Mass. 1999); *Nat'l Fir Protection Ass'n, Inc. v. Int'l Code Council, Inc.*, 2006 WL 839501, at *4 n.7 & at *11 n.13 (D. Mass 2006) ("NFPA correctly points out that these documents are not hearsay to the degree they are being proffered as examples of actual confusion and not to prove the truth of the matter asserted therein."); *Operation Able of Greater Boston, Inc.*, *v. Nat'l Able Network*, 646 F.Supp.2d 166, 175-76 (D. Mass. 2009); *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp 48, (D. Mass. 1993) (holding that affidavit of third party that third party overheard another third party make statements indicating confusion was not hearsay because not offered for the truth of the matter asserted). Professor McCarthy agrees that such evidence is not hearsay. 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:15 (4th Ed. 2004) ("In my view, it is clear that testimony from the plaintiff-trademark owner's employees or others about what customers have told them about their mistaken beliefs is not hearsay to be excluded from evidence.").

### E.    The Defendant's Intent In Adopting Its Mark

Explorica asserts that Elderhostel was reckless or willful in its use of a confusingly similar mark. There is no need to prove that Elderhostel intended to free ride on Explorica's goodwill. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992) (rejecting defendant's argument that award of its profits was inappropriate because there was no evidence that it intended to trade on plaintiff's goodwill, noting that "indeed, such an intent is necessarily absent in a reverse confusion case").

The failure to conduct a search weighs in favor of the senior user on the intent factor. *See, e.g., Tamko Roofing Prods.,* 282 F.3d. at 33; *cf. Trimark,* 2009 WL 3524707, at *11

(considering the failure to conduct a search as weighing in favor of the senior user on the intent factor of likelihood of confusion).

Elderhostel had an "affirmative duty" as a junior user to avoid causing a likelihood of confusion. *Boston Athletic Ass'n*, 867 F.2d at 29 ("When one uses a mark similar to one already in use, there is generally an affirmative duty to avoid the likelihood of confusion."); *Volkswagenwekr Atiengescellschaft v. Wheeler*, 814 F.2d 812 (1st Cir. 1987) ("[W]hen one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion."); *Davidoff Extension S.A. v. Davidoff Comercio E Industria Ltda.*, 747 F. Supp. 122, 131 (D.P.R. 1990) (weighing in favor of a likelihood of confusion, the fact that defendant "presented no proof to demonstrate that they acted affirmatively to avoid any likelihood of confusion" ); *Malletier v. Lincoln Fantasy*, Civ. No. 03-2277 (JAG), 2006 WL 2129025, *8 (D.P.R. July 27, 2006) ("[T]here is no excuse for another person to adopt and start using a similar or identical mark in connection with like products or services."); *Jacobs v. Robitaille*, 406 F.Supp. 1145, 1154 (D. N.H. 1976) ("In the trademark field, a newcomer has the affirmative duty . . . 'avoid all likelihood of consumers confusing it with the product or service of the first comer.'").

### F.    The Strength Of The Plaintiff's Mark

Explorica asserts that its mark is strong.  There are two components to the strength of the mark question: (i) inherent strength and (ii) commercial strength.  *PC Connection, Inc. v. Programmer's Connection, Inc.*, No. 92-206, 1994 WL 258656, at *6 (Feb. 1, 1994, D.N.H.). There is no dispute that Explorica's Mark is inherently strong – it has an incontestable federal registration and it is a fanciful mark.  With respect to commercial strength, "[v]arious factors are relevant in ascertaining the strength of a trademark, including the length of time the mark has been used, the trademark holder's renown in the industry, the potency of the mark in the product

9

field (as measured by the number of similar registered marks), and the trademark holder's efforts to promote and protect the mark." *Borinquen*, 443 F.3d at 121.

Elderhostel asserts that the Mark is commercially weak merely because the Mark has the root "Explor," which should be ignored because others use marks with that root for similar services. It is well-established, however, that marks should be viewed in their entireties when assessing similarity. *See*, *e.g.*, *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004) (rejecting argument that the commonly-used word ZONE be ignored in the likelihood of confusion analysis of AUTOZONE and POWERZONE); *YKK Corp. v. Jungwoo Zipper Co., LTD.*, 213 F. Supp.2d 1195, 1201-1202 (C.D. Cal. 2002) (refusing to drop the "generic" "Y" from the two marks "YKK" and "YPP" and compare the resulting "KK" and "PP," because to do so would "ignore the anti-dissection rule of trademark comparison"); *see also* 4 MCCARTHY § 23:41.

In addition, as set forth more fully in the accompanying Motion in Limine, even if the jury were permitted dissect the mark (it should not), the evidence Elderhostel offers is insufficient and inadmissible to prove that a mark is weak. *See EMC Corp. v. Hewlett-Packard Co.*, 59 F. Supp. 2d 147, 151 (D. Mass. 1999). In *EMC Corp.*, the court, in granting plaintiff's motion for preliminary injunction, rejected the defendant's evidence of similarly registered marks because "evidence of registration is not evidence of *use* of the marks by third parties." *See id.* (emphasis in original) (citing *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) (rejecting evidence of third party registration of similar marks on strength of mark issue where "[d]efendant introduced no evidence that the[ ] trademarks were actually used by third parties" and holding that "the existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use").

In assessing the commercial strength factor, the jury in a reverse confusion case should also consider the strength of the junior user's mark and its ability to swamp the senior user in the marketplace with its greater marketing resources. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, (1st Cir. 2006) ("[I]n a reverse confusion case, the relatively greater strength of a junior user like Maytag may hurt, rather than help, its defense.").

In its Preliminary Injunction Sur-Reply, Elderhostel argues that the third party registrations create a presumption of use. P.I. Sur-Reply at 9 (citing 15 U.S.C. 1057(c)). This is legally incorrect. While Lanham Act § 7(b), 15 U.S.C.A § 1057(b) creates a presumption that a registered mark was used, that presumption can only be used in *inter partes* proceedings for purposes of determining *priority*, by the owner of the registration, not by another. *Nike, Inc. v. WNBA Enterprises, LLC*, 2007 WL 763166 (T.T.A.B. 2007) (holding that third-party registrations are not evidence of use and the statutory presumption of validity and use is not available to the party citing the registrations); *see* T.B.M.P. § 704.03(b)(1)(B) ("However, the Section 7(b) presumptions accorded to a registration on the Principal Register accrue only to the benefit of the owner of the registration, and hence come into play ***only when the registration is made of record by its owner***, or when the registration is cited by a trademark examining attorney (in an ex parte case) as a reference under Section 2(d) of the Act, 15 U.S.C. § 1052(d), against a mark sought to be registered." (emphasis added)).

## II.    DAMAGES

The parties dispute whether monetary damages are appropriate if the jury finds a likelihood of confusion. Explorica seeks monetary damages in the form of (1) Elderhostel's profits in connection with the EXPLORITAS mark; (2) a corrective advertising award of 25% of Elderhostel's marketing budget for EXPLORITAS; and (3) attorney's fees for an "exceptional" case under the Lanham Act.

### A.    Elderhostel's Profits

In order to obtain Elderhostel's profits as damages for infringement, Explorica need only identify Defendant's revenue from use of the infringing mark.  The burden then shifts to Elderhostel to prove "all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).  It is well-established that direct costs are deductible, but certain overhead and indirect costs are not. *See, e.g., Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238,1242 (11th Cir. 2004) (refusing to deduct costs from gross sales where the costs would have been incurred even without sale of the prohibited product); *Nike Inc. v. Variety Wholesales, Inc.*, 274 F.Supp. 2d 1352,1373 (S.D. Ga. 2003) (refusing to allow deduction of overhead costs because they would have been incurred even without selling the accused goods).  As a result, there is no question that Defendant has accrued "profits" as determined under the Lanham Act.  It is Elderhostel's burden to show these deductible expenses.

Elderhostel asserts that because it is a non-profit corporation for tax purposes, that it does not have any profits associated with the sale of services under the EXPLORITAS mark.  In its Motion for Summary Judgment however, Elderhostel cites no case holding that organizations that are "nonprofit" for tax purposes are exempt from Lanham Act damages.

### B.    Corrective Advertising

Elderhostel did not raise the issue of Corrective Advertising in its Motion for Summary Judgment, so it appears that the parties do not dispute the legal standards on this issue.  Given the Court's remarks at the pretrial conference, Explorica will submit a supplemental brief on this topic to the Court on Thursday, February 11, 2010.

### C.    Exceptional Case

The inquiry into whether a particular case is "exceptional" under the Lanham Act, justifying an award of attorneys' fees, is fact specific and requires a balancing of several factors

to determine if the case rises to the level of "exceptional." *See Tamko Roofing Prods.*, 282 F.3d at 33 (considering many factors "as part of a case-specific multi factored analysis" and noting that "[i]t is the totality of the circumstances, rather than a particular item alone, that suffices for an award of attorneys' fees").  The Court should consider not only Elderhostel's conduct in proceeding to use the mark, despite knowledge of Explorica's use, but also Elderhostel's litigation tactics in this case. *See, e.g., Securacomm II*, 224 F.3d at 279-81 (rejecting infringer's argument that "District Court erred in awarding fees because any culpable conduct on the part of [defendant] involved stalling and litigation tactics rather than willful infringement of the [asserted] mark" because such an argument "assum[es] too limited a reading of the statute and as intruding into the broad discretion granted to the district courts by Congress."); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221-22 (2d Cir. 2003) (considering litigation misconduct in "exceptional" case inquiry); *S Indus., Inc. v. Stone Age Equip., Inc.,* 12 F.Supp 2d 796, 819-20 (N.D. Ill. 1998) (finding an exceptional case where Plaintiff misstated evidence and made frivolous legal arguments).

It is Elderhostel's position that Explorica must show fraud or bad faith in order to prove that the case is exceptional.  This is legally incorrect.  A plaintiff does not need to show fraud or bad faith as Elderhostel suggests.  *See Tamko Roofing Prods.*, 282 F.3d at 32 ("Fraud or bad faith may justify an attorneys' fees award in some cases, but a finding of bad faith or fraud is not a necessary precondition. Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award and the district court supportably finds the case exceptional.").

Dated: February 8, 2010                    Respectfully submitted,

                                           EXPLORICA, INC.

                                           By its attorneys,

                                           /s/ Mark S. Puzella
                                           James C. Rehnquist (BBO No. 552602)
                                            jrehnquist@goodwinprocter.com
                                           Mark S. Puzella (BBO No. 644850)
                                            mpuzella@goodwinprocter.com
                                           R. David Hosp (BBO No. 634091)
                                            rhosp@goodwinprocter.com
                                           GOODWIN PROCTER LLP
                                           53 State Street
                                           Boston, Massachusetts  02109
                                           Tel.:  617.570.1000
                                           Fax:  617.523.1231


## CERTIFICATE OF SERVICE

       I certify that Explorica, Inc.'s Trial Memorandum  was served upon all counsel of record
by electronic mail on February 8, 2010

                                           /s/ Mark s. Puzella
                                           Mark S. Puzella

## EXHIBIT A

## PROPOSED JURY INSTRUCTIONS

### Jury Instruction #1

[Introduction to the Case]

This is a trademark case involving two companies: Explorica, Inc. (which I will refer to as "Explorica") and Elderhostel, Inc., which operates using the name "EXPLORITAS." (I will refer to Elderhostel as "Elderhostel.") Explorica claims that Elderhostel's recent use of the name and mark EXPLORITAS is likely to cause confusion, mistake or deception, and thus violates Explorica's alleged established rights in its trademark, EXPLORICA. Explorica asserts that Elderhostel's actions constitute unlawful trademark infringement, dilution and unfair competition.

Elderhostel denies Explorica's claim, asserting that its use of EXPLORITAS is not likely to cause confusion, mistake or deception, and thus does not constitute trademark infringement and unfair competition.

**Jury Instruction #2**

[Definition of a Trademark]

It is important that you know something about what a trademark is. The term trademark includes any word, name, symbol, device, or any combination thereof, adopted and used by a business to identify and distinguish its products from those manufactured or sold by others, even if the specific source is unknown.[1] A service mark is like a trademark except that it is used to indicate the source of services rather than of products. The legal protections attaching to trademarks and service marks are the same, and for the purpose of these instructions I will use the terms trademark, mark, and service mark interchangeably.

The main function of a trademark is to designate the products or services of a particular business and to protect that business's goodwill against the confusion that would be caused by the sale of another's products or services under a too-similar mark. A trademark is a shortcut that helps a perspective purchaser to select the product or service that he or she wants. Put another way, a trademark identifies products or services as those of a particular business and allows the customer select a particular brand he or she wants to purchase.[2]

When a business establishes ownership of a trademark, in association with a product or service, the right to use it becomes an exclusive right, and the mark is the property of the business. No other business can then use this same or similar word or symbol in any manner that would be likely to cause confusion, mistake, or deception.[3]

The trademark laws are a type of consumer protection regulation and have as their fundamental purpose the avoidance of public confusion as to the origin of goods.[4]

---

[1]    15 USC § 1127.

[2]    *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1243 (D. Colo. 1976) (*affirmed in part, reversed in part on other grounds)*; 2 Duane Burton, Jury Instructions Intellectual Property Cases § 30: 20:01 (2002).

[3]    *Big O Tire Dealers*, 408 F. Supp. at 1243; 2 Jury Instructions Intellectual Property Cases at § 30:20:01.

[4]    1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (hereinafter "McCarthy") § 2.33 (4th Ed.).

## Jury Instruction #3

[Explorica's Section 32 Claim]

The first of Explorica's claims is based on federal law. Explorica is the owner of a federal registration for the trademark EXPLORICA for "tour guide services and travel arrangement services and travel information services provided on a global computer network." This means that Explorica is the owner of this trademark. In addition, because Explorica's trademark registration was approved more than five years ago, and Explorica has met certain requirements under federal law with respect to filings and notifications, the Explorica trademark has reached what is called incontestable status.[5] This means that no one can challenge Explorica's ownership of the mark or its trademark rights based on the argument that it is descriptive of the services for which Explorica uses the mark.[6]

Ownership of a federal registration gives Explorica the exclusive right to use its EXPLORICA mark, and to prohibit the use of any similar mark by any third party that "is likely to cause confusion, or to cause mistake or to deceive" consumers.

In addition, Section 43A of the Federal Trademark Act prohibits third parties from using any mark that "is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[7] Under this Section, it is not necessary that consumers believe that Elderhostel is Explorica in order for you to find that Elderhostel committed trademark infringement. It is enough that its use of Elderhostel is likely to make consumers believe that the two companies are related or associated with one another.[8]

You should also note that in order for Explorica to prevail, it need only show a likelihood of confusion, mistake, or deception. Explorica need not introduce any evidence of actual confusion or economic harm. This is because the likelihood of the confusion, on its own, is prohibited by the trademark laws.

---

[5]    15 U.S.C. § 1065; *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220-21 (1st Cir. 1989).

[6]    *Keds Corp.*, 888 F.2d at 220-21 ("[A]n incontestable mark may not be challenged as merely descriptive of the product.").

[7]    15 U. S. C. § 1125(A).

[8]    *Atrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 38 (1st Cir. 2006).

**Jury Instruction #4**

[Burden of Proof]

Each party has the burden to prove each element of its claims or defenses by a preponderance of the evidence.  Preponderance of the evidence means to prove something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely than not true.  The standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.  In determining whether any fact at issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them, and all Exhibits received into evidence, regardless of who may have produced them.

If the party with the burden of proof proves the elements of its claims or defenses by the preponderance of the evidence you must find for that party.  If, on the other hand, a party fails to prove any essential element of its claim or defense by preponderance of the evidence, you must find for the other party as to that claim or defense.

I will instruct you on the elements of each of the claims on the law you are to apply.

4

**Jury Instruction #5**

[Types of Actionable Confusion]

Because Explorica is the owner of a federally registered, incontestable trademark, the only question for you, as the jury, to decide in order to determine whether or not Elderhostel has infringed that mark is whether its use of the EXPLORITAS trademark is likely to cause confusion with the EXPLORICA trademark.

The trademark law seeks to prevent the likelihood of several types of confusion; three are at issue here: direct confusion, reverse confusion, and initial interest confusion. I will instruct you on each of these separately.

5

**Jury Instruction #6**

[Direct Confusion]

Direct confusion occurs when the junior user's use, including advertising of its mark, is likely to cause consumers to mistakenly believe that the junior user is the senior user, that the junior user's services are the senior user's services, or that the junior user is somehow connected with the senior user.

In this case, you should find for Explorica on the issue of direct confusion if you determine that Elderhostel's use, including advertising, of EXPLORITAS is likely to cause consumers to mistakenly believe that Elderhostel is Explorica, that Elderhostel's services are Explorica's, or that Elderhostel or its services are somehow connected with Explorica.

## Jury Instruction # 7

[Reverse Confusion]

Reverse confusion occurs when a larger junior user drowns out or overshadows a smaller senior user or its mark, so that it is likely to cause consumers to mistakenly believe that the junior user is the senior user, that the junior user's services are the senior user's or that the junior user or its services are somehow connected to the senior user.  As a result of reverse confusion, the smaller, senior user loses the "value of its trademark" – "its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets."[9] Reverse confusion protects trademark owners from this harm and protects smaller senior users against larger more powerful companies who want to use identical or confusingly similar trademarks.

In this case, you should find for Explorica on the issue of direct confusion if you determine that Elderhostel's use, including advertising, of EXPLORITAS will "drown out" or overshadow Explorica or its mark, so that it is likely to cause consumers to mistakenly believe that Explorica is Elderhostel, that Explorica's services are Elderhostel's or that Explorica or its services are somehow connected with Elderhostel.

---

[9]    *Atrezzi*, 436 F.3d at 39.

**Jury Instruct #8**

[Initial Interest Confusion]

Finally, initial interest confusion occurs when the junior user's mark, through advertising or the internet, is likely to divert customers looking for the senior user to the junior user, thereby increasing the junior user's sales opportunities.

In this case, you should find for Explorica on the issue of direct confusion if you determine that Elderhostel's use, including advertising and internet, of EXPLORITAS is likely to divert customers looking for Explorica to Elderhostel, thereby increasing Elderhostel's sales opportunities.  In the context of initial interest confusion, the customers need not be confused at the time they ultimately purchase a product from either company; all that is required that they are initially diverted to Elderhostel as a result of the similarity between EXPLORITAS and EXPLORICA.[10]

---

[10]    *EMC Corp. v. Hewlett-Packard Co.*, 59 F.Supp.2d 147, 150 (D. Mass. 1999).

8

**<u>Jury Instruction # 9</u>**

[Import of type of Confusion]

In a moment, I will instruct you on the factors you will consider in determining whether a likelihood of confusion exists. For the most part, the type of the alleged likely confusion – whether direct or reverse or initial interest – should not affect your consideration of the likelihood of confusion factors. However, the focus of some likelihood of confusion factors may change when considering the likelihood of reverse confusion. I will indicate where the analysis differs or the focus changes.

**Jury Instruction #10**

[The Likelihood of Confusion Factors]

Now that I have explained to you the types of likely confusion that are unlawful, I will discuss the test for determining whether there is a likelihood of confusion. To determine whether a likelihood of confusion exists in this case, you should consider the following factors:

1.    The similarity of the marks;

2.    The similarity of services;

3.    The relationship between the parties' channels of trade and advertising;

4.    The similarity in the classes of prospective purchasers;

5.    Evidence of actual confusion;

6.    Elderhostel's intent in adopting its mark;

7.    The strength of Explorica's mark.

You need not give all of these factors equal weight, nor do you need to apply every factor. None of these factors, standing alone, is determinative in the likelihood of confusion analysis. Nor is the determination of likelihood of confusion based on adding up the number of factors that favor one party of another. In some situations, one or two factors will be more persuasive, and other situations, different factors will seem more important. In this case it is your job to determine which factors you find to be the most telling, and which factor must be weighed and balanced against the other in light of the total evidence presented at trial. In short, the factors are meant to be tools, not hurdles.

**Jury Instruction #11**

[Similarity of the Mark]

The first factor that you must consider in determining whether there is a likelihood of confusion is the similarity between the marks themselves – EXPLORICA and EXPLORITAS. Although the degree of similarity between the marks is only one factor in the multi-factor confusion analysis, when parties directly compete, as they do here "the most important factor in the [likelihood of confusion] analysis is the similarity-of-marks inquiry."[11]  If the overall impression created by marks is essentially the same, it is very probable that the marks are confusingly similar."[12]

In considering the similarity of trademarks, you must take into account the "total effect" of the marks, examining sight, sound, and meaning, and taking the context of the use into consideration, and determine whether these elements combine to create a similar commercial impression for the marks at issue.[13]

In making this determination, the test is not a side-by-side comparison emphasizing the marks' differences in detail.[14]  Rather, the proper test is whether the average consumer, encountering one of the marks in isolation in the marketplace, and having only a general recollection of the other, would likely confuse the two.[15]

---

[11]    *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 27 (1st Cir. 2008); *Checkpoint Sys. Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001).

[12]    *Checkpoint*, 269 F.3d at 281.

[13]    *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 44 (D. Mass. 1995). *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 229 (3d Cir.2000).

[14]    *Fisons Horticulture, Inc. v. Vigoro Indus., Inc*, 30 F.3d 466, 477 (3d Cir. 1994); *Copy Cop*, 908 F. Supp at 44; *Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc.*, 288 F.Supp.2d 105,114 (D.N.H. 2003)

[15]    *Fisons*, 30 F.3d at 477-78; *Checkpoint*, 269 F.3d at 281.

**Jury Instruction #12**

[Similarity of the services]

The second factor that you must consider in determining whether there is a likelihood of confusion is the similarity between the services the parties offer.  The more closely related the services are, the more likely there will be confusion.

The law does not require that Explorica and Elderhostel be direct competitors for a likelihood of confusion to exist, though if you find that they do compete, this makes the likelihood greater.  All the law requires for a finding in favor of Explorica on this factor is that the services are related, they do not need to be identical.[16]

In addition, if you find that the parties do not offer related services today, you are entitled to consider whether the parties are likely to offer related services in the future.[17]  If you find that the services offered by the parties are likely to overlap in the future, that would increase the likelihood of confusion more.

---

[16]    *See Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 546 (1st Cir. 1995) (hoof care products); *Aura Commc'ns, Inc. v. Aura Networks, Inc.*, 148 F. Supp. 2d 91, 95 (D. Mass. 2001) (wireless communications environment); *Northern Light Tech., Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 111 (D. Mass. 2000) (web-based navigation services); *Pub. Svc. Co. of New Mexico v. Nexus Energy Software, Inc.*, 36 F. Supp. 2d 436, 439 (D. Mass. 1999) (energy information services); *Jordache Enter., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 517 (S.D.N.Y. 1993) (greater likelihood of confusion where the junior user's product competes for a slightly different market segment than the senior user).

[17]    *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986) (where trademark owner shows intent to enter the market of the alleged infringer, such a showing is indicative of future likelihood of confusion as to source and the more closely the products compete, the shorter the gap is to bridge).

## Jury Instruct #13

[The Relationship Between the Parties Channels of Trade and Advertising]

The third factor that you must consider in determining whether there is a likelihood of confusion is the similarity between the parties' channels of trade and advertising.  Where both parties "compete for [the] same customers and advertise in the same media to reach the same customers," then there is a strong likelihood that these factors cut in favor of the plaintiff.[18]  This does not mean that the parties must appear in the exact same catalog or magazine for there to be a likelihood of confusion.[19]  All the law requires for this factor to weigh in favor of Explorica is that the parties' marketing overlap.[20]

Similarly, to the degree that you fine that Elderhostel and Explorica have some customers that overlap, this factor would weigh in favor of a finding of likelihood of confusion.[21]

---

[18]   *See Copy Cop*, 908 F. Supp. at 45.

[19]   *Trimark USA, Inc. v. Performance Food Group Co., LLC*, No. 09-11222,2009 WL 3524707, at *9 (D. Mass. Oct. 21, 2009) (finding overlapping marketing channels where both companies "advertise their services via *their* websites and catalogs." (emphasis added)).

[20]   *See id.* (granting preliminary injunction and finding "to the extent that the marketing and purchasers are not identical, there is 'overlap in these categories that could increase the risk of confusion.'" (quoting *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 55-56 (D. Mass. 1990)).

[21]   *See Trimark*, 2009 WL 3524707, at *9 (granting preliminary injunction and finding "to the extent that the marketing and purchasers are not identical, there is 'overlap in these categories that could increase the risk of confusion.'" (quoting *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 55-56 (D. Mass. 1990)); *Tamko Roofing Prods. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 35 (1st Cir. 2002) ("Under [First] circuit precedent, there may be infringement, as well as an accounting of defendant's profits, *even when most of the products are not in competition*, if there is evidence, as there was here, of likelihood of confusion." (emphasis added))

## Jury Instruction #14

[The Sophistication of and Care Exercised by Prospective Customers]

I will now discuss the fourth factor:  the sophistication and care exercised by consumers when making purchasing decisions or transacting business.  In evaluating this factor, you must consider the degree of care exercised by "an ordinary consumer using ordinary care and caution."[22]  You should also keep in mind that the trademark laws are meant to protect <u>all</u> consumers, not just those who exercise a high degree of care.[23]  Generally, the greater care and attention paid to a purchasing decision, the lower the likelihood of confusion.[24]

Where "the [parties'] services, marketing channels, and operative names are identical and the marks are very similar, the factor of customer attention or care correspondingly becomes less important."[25]  In analyzing this factor, it is appropriate to consider whether consumers have in fact been confused.  I will discuss actual confusion in my next instruction.

---

[22]  *American Diabetes Ass'n, Inc. v. National Diabetes Ass'n*, 533 F. Supp. 16, 21 (E.D. Pa. 1981) ("The test for the degree of care exercised is whether an ordinary purchaser using ordinary care and caution is likely to be confused.  Thus the legal standard of care should not be so high that the public is required to dissect and analyze trademarks in order to avoid confusion." (internal citations omitted)), *aff'd without opinion*, 681 F.2d 804 (3d Cir. 1982); *Byrnes & Kiefer Co. v. Flavoripe Co.*, No. 85-2884, 1986 U.S. Dist. LEXIS 21367, at *11 (W.D. Pa. Aug. 20, 1986) ("The degree of care that must be exercised by the consumer is that of an ordinary purchaser using ordinary care and caution.").

[23]  *Country Floors*, 930 F.2d at 1066 ("[T]he trademark law protects the entire gamut of purchasers, including retail customers and members of the trade.").

[24]  *Veryfine Prods., Inc. v. Colon Bros., Inc.*, 799 F.Supp. 240,253 (D.P.R. 1992).*Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 204 (3d Cir. 1995).

[25]  *Horizon Financial, F.A. v. Horizon Bankcorp*, 2 U.S.P.Q. 2d 1696, 1703 (E.D. Pa. 1987); *Laurel*, 45 F. Supp. 2d at 494; *cf. Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 30 (1st Cir. 1989) (treating channels of trade, advertising, and prospective purchasers together).

## Jury Instruction #15

[Evidence of Actual Confusion]

I will now discuss the fifth factor: evidence of actual confusion. Evidence of actual confusion is not required to prove likelihood of confusion.[26] Further, Explorica need not prove "meaningful" confusion or that the confusion has caused economic harm to Explorica.[27] Actual confusion is not required because "it is difficult to find evidence of actual confusion because many instances are unreported."[28]

If there is evidence of actual confusion, it is the most relevant and probative evidence of likelihood of confusion.[29]

Actual confusion can take many forms, including instances involving misdirected communications and attempts to contact the wrong company based on confusion between the names EXPLORICA and EXPLORITAS. For example, a consumer could attempt to conduct business with the wrong company, such as trying to book a trip or check on their travel status and plans. These instances are relevant regardless of whether consumers complete any transaction.

---

[26] *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987) ("A showing of actual confusion is not essential in order to find a likelihood of confusion."). *Checkpoint*, 269 F.3d at 291; *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) ("[A]ctual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."); *see also ConAgra, Inc. v. Hormel*, 990 F.2d 368, 371 (8th Cir. 1993) (plaintiff "need not prove intent or actual confusion" to prevail); 3 McCarthy § 23:12.

[27] *Checkpoint*, 269 F.3d at 291; *Waples-Platter Cos. V. Gen. Foods Corp.*, 439 F. Supp.551, 585 (N.D. Tex. 1977) ("Where there is a likelihood of confusion over the origin of a subsequent user's products, the prior user is entitled to prohibitive injunctive relief against the use of his mark by the subsequent user, regardless of whether or not actual confusion, actual economic harm, or bad faith has been shown."); *James Burrough*, 540 F.2d 266, 276 (7th Cir. 1976) (holding that economic harm per se is not required for liability because damage is presumed from the likelihood of confusion).

[28] *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) ("Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant . . . ."); *Volkswagenwerk*, 814 F.2d at 818 ("A showing of actual confusion is not essential in order to find a likelihood of confusion.").

[29] *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120(1st Cir. 2006) ("[A] trademark holder's burden is to show likelihood of confusion, not actual confusion. While evidence of actual confusion is 'often deemed the best evidence of possible future confusion,' proof of actual confusion is not essential to finding likelihood of confusion." (quoting *Atrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006); *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8 (1st Cir. 2004) ("Evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion") (*citing KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 720 (3d Cir.2004) ("[E]ven a few incidents" of actual confusion are "highly probative of the likelihood of confusion" (internal quotation marks omitted); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir.2002) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely." (internal quotation marks omitted))); *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 n.5 (6th Cir. 1982); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965) ("[s]ince reliable evidence of actual confusion is difficult to obtain in trademark and unfair competition cases, any such evidence is substantial evidence of likelihood of confusion."); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987).

On that note, when considering evidence of actual confusion, you should keep in mind that confusion that creates initial customer interest is probative, even if the confusion is quickly cleared up and no purchase or business transaction is ultimately made.[30]  For example, if a consumer visits one of the parties' websites mistakenly believing it to be the other party, that is relevant confusion even if they learn of their mistake while at the website or later.

---

[30]    *EMC Corp*, 59 F.Supp.2d at 150-51; *Checkpoint*, 269 F.3d at 294-95.

16

## Jury Instruction #16

[The Defendant's Intent In Adopting Its Mark]

Proof of an intent to confuse the public is not necessary to a finding of likelihood of confusion.[31] But if there is an intent to confuse, it "might be highly probative of likelihood of confusion."[32] In addressing this factor, you may consider whether Elderhostel knew about Explorica's mark, and whether Elderhostel proceeded to use its marks in disregard of Explorica's prior rights.[33]

Similarly, there is no need to prove that Elderhostel intended to free ride on Explorica's goodwill.[34] By contrast, the failure to conduct a search weighs in favor of the senior user on the intent factor.[35] Elderhostel had an "affirmative duty" as a junior user to avoid causing a likelihood of confusion.[36] As a result, if you find that Elderhostel failed to take reasonable steps to avoid confusion through the use of the EXPLORITAS name, you may find that this factor weighs in favor of a finding of likelihood of confusion.

---

[31]  *Trimark USA*, 2009 WL 3524707, at *11 ("Although intent to confuse consumers can constitute strong evidence of confusion, the converse is not true: the lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source."); *A&H Sportswear*, 166 F.3d at 196 (noting that intent is not necessary to prove infringement and that good faith is not a defense to infringement); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998).

[32]  *American Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 371 (3d Cir. 1987); *Trimark USA*, 2009 WL 3524707, at *11.

[33]  *First Nationwide Bank*, 682 F. Supp. at 977 (bad faith may be found where defendants proceeded to use the infringing mark despite knowledge of the senior party's objection to its use).

[34]  *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992) (rejecting defendant's argument that award of its profits was inappropriate because there was no evidence that it intended to trade on plaintiff's goodwill, noting that "indeed, such an intent is necessarily absent in a reverse confusion case"

[35]  *See, e.g., Tamko*, 282 F.3d. at 33; *cf. Trimark*, 2009 WL 3524707, at *11 (considering the failure to conduct a search as weighing in favor of the senior user on the intent factor of likelihood of confusion).

[36]  *Boston Athletic Ass'n*, 867 F.2d at 29 ("When one uses a mark similar to one already in use, there is generally an affirmative duty to avoid the likelihood of confusion."); *Volkswagenwekr Atiengescellschaft v. Wheeler*, 814 F.2d 812 (1st Cir. 1987) ("[W]hen one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion."); *Davidoff Extension S.A. v. Davidoff Comercio E Industria Ltda.*, 747 F. Supp. 122, 131 (D.P.R. 1990) (weighing in favor of a likelihood of confusion, the fact that defendant "presented no proof to demonstrate that they acted affirmatively to avoid any likelihood of confusion" ); *Malletier v. Lincoln Fantasy*, Civ. No. 03-2277 (JAG), 2006 WL 2129025, *8 (D.P.R. July 27, 2006) ("[T]here is no excuse for another person to adopt and start using a similar or identical mark in connection with like products or services."); *Jacobs v. Robitaille*, 406 F.Supp. 1145, 1154 (D. N.H. 1976) ("In the trademark field, a newcomer has the affirmative duty . . . 'avoid all likelihood of consumers confusing it with the product or service of the first comer.'").

**Jury Instruction #17**

[The Strength of The Marks]

I will now discuss the likelihood of confusion factor number one: the strength of the marks. The strength of a mark is determined by (1) the inherent strength of the mark and (2) its commercial strength or marketplace recognition.[37]

---

[37]  *PC Connection, Inc. v. Programmer's Connection, Inc.*, 1994 WL 258656 (D.N.H. 1994) ("The strength of a particular mark depends on its inherent distinctiveness and its commercial strength in the marketplace." (citing *Boston Athletic Ass'n* 867 F.2d at 32)); *Fisons Horticulture*, 30 F.3d at 478-79.

**Jury Instruction #18**

[Factor No. 1: Inherent Strength]

The inherent strength of a mark determines whether the mark is protectable as a trademark in the first instance.  In this case, Explorica has an incontestable federal registration for its EXPLORICA mark.  As a result, the EXPLORICA mark is deemed as a matter of law to be inherently strong and protectable.[38]

---

[38]    *See, e.g.,  Keds Corp.*, 888 F.2d at 220-21 ("[A]n incontestable mark may not be challenged as merely descriptive of the product.").

19

## <u>Jury Instruction #19</u>

[Factor No. 2:  Commercial Strength]

Marketplace or commercial strength is determined by the following factors: length of use of a mark, amount of sales under the mark, amount of advertising under the mark, and public recognition under the mark.[39]

For purposes of direct confusion, the stronger Explorica's mark, the greater protection it receives, and the more likely confusion will be.[40]  Stated another way, the stronger the mark, the less similarity is required for another's mark or product to present a likelihood of confusion.[41]

For purposes of reverse confusion, the greater Elderhostel's marketing power and reach is, the greater the likelihood of reverse confusion.  Specifically, the greater the relative commercial power that Elderhostel can exercise in promoting its EXPLORITAS mark in the industry, the more likely it will "overwhelm" the marketplace, diminishing the value of Explorica's mark.  Thus, for purposes of reverse confusion, any perceived lack of commercial strength of Explorica's mark should be given "less weight in the analysis because it is the strength of Elderhostel's mark which results in reverse confusion."[42]  For reverse confusion, you should thus consider whether Elderhostel's advertising and marketing will result in a "saturation of the public awareness" in Explorica's market.[43]

### <u>The effect of third-party marks on the commercial strength</u>

In some circumstances, a mark's commercial strength may be lessened by the existence of similar third-party marks.[44]  However, evidence of third-party marks used on unrelated goods and services is irrelevant.[45]

The significance of third-party marks also depends upon their usage.  To be relevant, the marks must actually be used by third parties in the relevant product market.[46]  In addition, they

---

[39]   *Boriquen Biscuit*, 443 F.3d at 121; *A&H Sportswear*, 237 F.3d at 224; *Bebe Stores, Inc. v. The May Department Stores Int'l, Inc.*, 2002 U.S. Dist. LEXIS 20463, at * 33 (E.D. Mo. 2002).

[40]   *Id.* at 222.

[41]   *Id.*; *see also  Versa Prods. Co. v. BiFold Co. (Mfg.) Ltd.*, 550 F.3d 189, 203 (3d Cir. 1995) (observing that stronger marks carry greater recognition, and that therefore a similar mark is more likely to cause confusion.)

[42]   *A & H Sportswear*, 237 F.3d at 231; *see Attrezzi*, 436 F.3d. at 40.

[43]   *A & H Sportswear*, 237 F.3d at 231; *see Attrezzi*, 436 F.3d. at 39.

[44]   2 McCarthy § 11:85.

[45]   *See Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990); *Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, No. 92-C-5170, 1994 U.S. Dist. LEXIS 13725, at * 8 (N.D. Ill. 1994); *Helene Curtis Indus., Inc. v. Suave Shoe Corp.*, 13 U.S.P.Q.2d 1618, 1622 n. 27 (TTAB 1989).

[46]   *See EMC Corp.*, 59 F. Supp. 2d at 151; *Scarves By Vera, Inc. v. Todo Imps. Ltd.*, 544 F.2d 1167, 1179 (2d Cir. 1976); *see also McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.3d 1163, 1171 (7th Cir. 1986) (concluding that defendants failed to prove absence of genuine issue of material fact regarding strength of mark since "third party registrations of [similar] trademarks . . . are material in determining the strength of the [plaintiff's] mark only to the extent that the similar marks are promoted by their owners or recognized by the consuming

must also be well promoted or recognized by consumers in that market in order to be relevant or have a weakening effect.[47]  As a result, the mere fact that third-party names or marks are listed or identified in trademark searches, Internet domain name searches, databases, directories, or other business listings is not evidence that the names or marks are being used in the marketplace.  In order for any name or mark listed in a trademark search, Internet domain name search, database, directory, or other bank or business listing to have any relevance, there must be evidence that the name or mark is actually being used, and that the name or mark is well promoted or recognized by consumers in that area.

Thus, when considering the trademark search reports, Internet domain name searches, databases, directories, and other business listings offered by Elderhostel, you should bear in mind that these do "not constitute evidence of either the existence of a registration or of the use of a mark."[48]  A search report, database, directory, or other listing does not, on its own, establish that a mark is weak because it does not show that consumers have been conditioned to differentiate between marks in the relevant geographic area at issue.[49]

---

public"); *National Lead Co. v. Wolfe*, 223 F.2d 195, 204 (9th Cir. 1955) (holding third-party uses, for which there was no proof of any sales, insufficient to prove that plaintiff's mark became generic); *Powerfood, Inc. v. Sports Science Inst.*, No. C-93-0259, 1993 U.S. Dist. LEXIS 2191 (N.D. Cal. Feb. 24, 1993) (noting defendant "bears the burden of producing evidence of actual widespread usage . . . in the relevant market"); *Charles Schwab & Co. v. Hibernia Bank,* 665 F. Supp. 800, 806 (N.D. Cal. 1987) (holding that third-party registrations and telephone listings failed to prove that a mark was weak without "evidence of what happens in the marketplace or that customers are familiar with their use," and explaining "defendant has the burden of showing how extensive the uses are and how long they have continued").

[47]    *Id.*

[48]    3 McCarthy §§ 11.88 (discussing lists, articles, and trademark search reports), 11:89 (discussing trademark search reports); *see EMC Corp.*, 59 F. Supp. 2d at 151;  *Chips 'n Twigs, Inc. v. Chip-Chip, Ltd*, 414 F. Supp. 1003, 1017 (E.D. Pa. 1976) (stating that "the mere introduction of these third-party registrations does not prove that the marks to which they apply are actually in use").

[49]    3 McCarthy §§ 11.88-11:89.

**Jury Instruction #20**

[The Effect Of Elderhostel's Registration]

As I have previously indicated, Explorica owns an incontestable federal registration for the mark EXPLORICA.  As a result, it has the exclusive right to use that mark, and no one may use any mark that would likely cause confusion with it.

Elderhostel also owns a federal registration for its mark EXPLORITAS.  However, there is no dispute that that registration was obtained at least nine years after Explorica began using its EXPLORICA mark.  As a result, Elderhostel's registration is not a defense to Explorica's trademark claims if there is a likelihood of confusion between the two marks.  If there is a likelihood of confusion, then your determination should be that Elderhostel has infringed Explorica's trademark rights.

In considering whether or not there is a likelihood of confusion between the two marks, you can consider, but are not required to consider, the fact that the Patent and Trademark Office approved Elderhostel's EXPLORITAS mark for registration.  In making that determination, the Patent and Trademark Office may have considered the fact that Explorica had a prior registration for the mark EXPLORICA.  However, there is no direct evidence regarding what specifically was considered, or how much time and analysis was spent on that determination.  In any event, the Patent and Trademark Office did not review or have access to all the evidence available to you in this case.  As a result, you are the ultimate decision maker in this case, and you may consider or disregard the Patent and Trademark Office's determinations as you see fit.  The Patent and Trademark Office's granting of Elderhostel' application is entitled to no weight in this case.[50]

---

[50]    *See TriMark,* 2009 WL 3524707, at *7 (emphasis added) (*quoting Kos Pharm., Inc. v. Andrx Corp., 3*69 F.3d 714 (3d. Cir. 2004);  *see also A & H Sportswear*, 237 F.3d at 221.

**Jury Instruction #21**

[Massachusetts Statutory Dilution]

In addition to rights under federal law, Explorica owns a registration for its EXPLORICA mark under Massachusetts law.  Under Massachusetts law, you may also find that Elderhostel's use of the EXPLORITAS mark dilutes the distinctive quality of the EXPLORICA mark.  In order to make such a finding, you need not find that the parties compete or that there is a likelihood of confusion between the EXPLORICA and EXPLORITAS marks; it is enough under this claim for you to find that the use of the EXPLORITAS mark in some way reduces the distinctiveness of the EXPLORICA mark.  If you find that it does, you should find for Explorica on the issue of state law dilution.

**Jury Instruction #22**

[Unfair Business Practices]


In this Commonwealth the law prohibits anyone from using any unfair or deceptive acts or practices in the course of business dealings.  In this case you are being asked to decide whether the defendant's actions toward the plaintiff amounted to an unfair or deceptive act or practice.

That phase is a broad and a flexible one, and it is intentionally so.  The standard for determining whether something is "deceptive"  is fairly easy to state.  It includes any communication that is made with the intent to deceive another person.  But Intent to deceive is not always necessary.  In this area, the law holds that any act or practice is deceptive if it could reasonably cause a person to act differently from the way he would act if he knew the truth about the matter.

The standard for determining whether something is "unfair" is a bit more complicated to summarize.  But there are three questions that you may wish to consider in determining whether an act or practice is "unfair."  First, does it fall within some established concept of unfairness?  For something to be unfair, it is not always necessary that it violate some other law or a government regulation; in fact, a practice can be technically legal under other laws but still unfair.  But whether or not it is permitted by law is a good place to start your consideration of it.

Secondly, you should ask yourself whether the defendant's actions toward the plaintiff were unethical, or oppressive, or unscrupulous, or otherwise unconscionable.  That obviously involves you in a moral judgment about the ethics of the marketplace.  You as the jury are the collective conscience of this community, and as such you are well equipped to make that judgment.  In deciding whether the defendant's actions were oppressive or unscrupulous, remember that you muse decide that question in the context of the commercial marketplace where, on the one hand, people don't expect to be cheated but, on the other hand, they should expect to deal with each other prudently and at arms' length.

Finally, you should consider whether the defendant's act or practice would cause substantial injury to the public or to consumers in general.  If a practice is likely to injure many consumers substantially, that makes it more likely that it is an unfair practice.

## Jury Instruction #21

[Explorica's Claims for Monetary Relief (Trademark Claims)]

If you find for Explorica on its unfair competition and trademark infringement claims, the court can exercise its discretion to prohibit Elderhostel from using the EXPLORITAS Mark. I will next address monetary damages. If Explorica has proven that it suffered specific monetary damages, you may also award such damages to Explorica. Explorica has asked for the following relief: (1) that Elderhostel be required to pay Explorica the monetary damages that Explorica has sustained as a consequence of Elderhostel's allegedly wrongful acts; and (2) that Elderhostel be required to pay Explorica any monies, profits, and advantages wrongfully gained by Elderhostel. I will discuss these damages claims in the following instructions.[51] The fact that I am instructing you regarding damages does not mean that I am of the opinion either that Explorica may be entitled to recover damages or that Explorica may not be entitle to recover damages. That is for you to decide.[52]

---

[51]   Explorica has not included in this instruction its claims for treble damages, costs, and attorneys' fees because those awards are purely equitable and thus lies in the Court's sole discretion.

[52]   2 Duane Burton, Jury Instructions in Intellectual Property Cases § 30:80:02 (citing *Conan Prop., Inc. v. Conan Pizzas, Inc.*, 752 F.2d 145 (5th Cir. 1985)).

25

## Jury Instruction #22

[Actual Damages]

You may award Explorica damages for the amount of money that will reasonably and fairly compensate Explorica for any injury you find was caused by Elderhostel's infringement and unfair competition.[53]   In this case, Explorica's claims damages related to loss of goodwill and reputation, costs in responding to Elderhostel's infringement and unfair competition, and costs associated with corrective advertising and the rehabilitation of its trademark.   In determining whether any or all of those claims have been established, you should consider the following when assessing the amount of damages:

1.    The injury to and loss of Explorica's reputation;

2.    The injury to and loss of Explorica's goodwill, including injury to Explorica's general business reputation;

3.    The cost and expense of preventing customers from being deceived;

4.    The cost and expense of corrective advertising and measures that Explorica has taken to get back its name and reputation, including lost time spent by employees to correct consumer confusion, mistake, or deception caused by Elderhostel's activities and to rehabilitate its trademark;[54]

5.    The cost and expense of future corrective advertising that Explorica will be required to spend in the future to correct any confusion, mistake, or deception caused by Elderhostel's activities;[55] and

6.    Any other factors that bear on Explorica's actual damages.[56]

As noted above, in determining damages, you may consider whether Explorica suffered any measurable loss to its goodwill.  The goodwill of a company is an intangible business value, which reflects the basic human tendency to do business with a merchant who offers products or services of the type and quality that the customer desires and expects.  Service to the customer and a willingness to stand behind a warranty and other representations about the quality of the products or services offered or sold by a company are all factors in the goodwill of that business.[57]

---

[53]    15 U.S.C. § 1117(a).

[54]    *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374-75 (10th Cir. 1977).

[55]    *Id.*

[56]    *See* 5 McCarthy § 30:72; 3 Jerome Gilson, Trademark Protection and Practice § 8.08[2] (2001); Ninth Circuit Model Civil Jury Instructions at 18.23;

[57]    *See Big O Tire Dealers*, 408 F. Supp. at 1248-49.

The goodwill attached to a particular service or business may be symbolized in whole or in part by the consuming public's acceptance and recognition of a trademark or name. That goodwill is a part of the overall business value, which is the goodwill of the company.[58]

If you find that Explorica's goodwill has been damaged either by injury to the goodwill associated with a particular service or injury to its general business reputation, you may assess such damages as you may find shown by the evidence. The measure of Explorica's damage is the difference between the value of such goodwill before and after the acts of Elderhostel.[59] Difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you should use your best judgment in determining the amount of such damages, if any, based on the evidence.[60]

In addition, Explorica's damages can include the cost of corrective advertising to reestablish control over its trademark and brand identity. Explorica need not show damage to its reputation to be entitled to corrective advertising as long as it can show that a likelihood of confusion has impacted its ability to control its good will in the mark.[61] As a general rule, corrective advertising can be awarded in an amount of twenty-five percent of the amount spent by Elderhostel on its marketing efforts in the mark EXPLORITAS.[62]

---

[58]   *Id.* at 1249.

[59]   *Id.*

[60]   *Id.* at 1245.

[61]   *Big O Tire Dealers*, 561 F.2d at 1372.

[62]   *Id.* at 1375-76.

**Jury Instruction #23**

[Elderhostel's Profits]

     In addition to actual damages, Explorica is entitled to recover any profits earned by Elderhostel that are attributable to its infringement.[63]  An award of Elderhoste's profits is appropriate if you find that there is a likelihood of confusion.[64]  "Knowing or willful infringement consists of more than the accidental encroachment of another's rights.  It involves an intent to infringe or a deliberate disregard of a mark holder's rights."[65]  This can arise from an "indifference" to those rights.[66]

     Profit is determined by deducting allowable expenses from gross revenue for the products sold using the infringing mark.

     Gross revenue is all of Elderhostel's receipts from using the trademark.  Once Elderhostel's gross revenue has been established, Elderhostel has the burden of proving any allowable deductions to that figure.[67]

     Allowable deductions include direct expenses from the provision of the services.  It does not include general operating costs, overhead, or salaries.  Elderhostel has the burden of proving the expenses.[68]

---

[63]   15 U.S.C. § 1117(a).

[64]   *Securacomm Consulting Inc. v. Securacomm Inc.*, 166 F.3d 182, 187 (3d Cir. 1999).

[65]   *Id.*

[66]   *Id.* (citing *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)).

[67]   15 U.S.C. § 1117(a).

[68]   *Id.*

## EXHIBIT B

## PROPOSED VERDICT QUESTIONS

**Q.1**    Has Explorica established direct confusion, i.e. that potential consumers are likely to be confused into mistakenly believing that Explorica is the source of Elderhostel's services?

**A.1.**    Yes _____        No_____

**Q.2**    Has Explorica established reverse confusion, i.e. that consumers are likely to be confused into mistakenly believing that Elderhostel is the source of Explorica's services?

**A.2.**    Yes _____        No_____

**Q.3**    Has Explorica established initial interest confusion, i.e. that consumers are likely to be diverted to Elderhostel by a mistaken belief that Elderhostel is the source of Explorica's services, even though such confusion is dispelled before the customer makes a purchase?

**A.3.**    Yes _____        No_____

**Q.4.**    Has Explorica established that consumers are likely to be deceived as to the affiliation, connection, or association between Explorica and Elderhostel or as to the origin, sponsorship or approval of either party's services based on Elderhostel's use of the mark EXPLORITAS?

**A.4.**    Yes _____        No_____

**Q.5.**    Has Explorica established that Elderhostel's use of the mark EXPLORITAS will lessen the distinctive quality of Explorica's EXPLORICA mark even if the marks are not likely to be confused?

**A.5.**    Yes _____        No_____

**Q.6.**    Has Explorica established that Elderhostel has engaged in unfair or deceptive business practices?

**A.6.**    Yes _____        No_____

**Q.7.**    If you answered "yes" to any of questions 1, 2, or 3, do you find that Elderhostel's infringement was willful?

**A.7.**    Yes _____        No_____

**Q.8.** Has Elderhostel's infringement or dilution of the EXPLORICA mark caused harm to Explorica such that an award of Elderhostel's profits to Explorica is appropriate?

**A.8.** Yes _____          No_____

**Q.9.** If you answered "Yes" to Question 8, please state in words and figures the dollar amount of damages which you have determined Elderhostel should pay to Explorica under an award of Elderhostel's profits:

**A.9.**

_____

(Amount in words)

_____

(Amount in figures)

**Q.10.** Has Elderhostel's infringement or dilution of the EXPLORICA mark caused harm to Explorica such that an award of corrective advertising is appropriate?

**A.10.** Yes _____          No_____

**Q.11** If you answered "Yes" to Question 10, please state in words and figures the dollar amount of damages which you have determined Elderhostel should pay to Explorica under an award of corrective advertising:

**A.11.**

_____

(Amount in words)

_____

(Amount in figures)

## EXHIBIT C

## PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION

1.     Are you currently or have you ever been employed in the marketing or branding industry?

2.     Are you currently or have you ever been employed in the travel industry?

3.     Are you currently or have you ever been employed as a teacher?

4.     Have you ever participated or do you have plans to participate in an Elderhostel or Exploritas program?

5.     Have you ever booked a vacation or other travel through an Internet website?

**EXHIBIT D**

**SUCCINCT AND NEUTRAL STATEMENT SUMMARIZING THE PRINCIPAL CLAIMS OF EXPLORICA TO BE READ TO THE VENIRE DURING EMPANELMENT**

      This is a trademark case involving two companies: Explorica, Inc. (which I will refer to as "Explorica") and Elderhostel, Inc., which recently started using the name "EXPLORITAS." (I will refer to Elderhostel as "Elderhostel.")  Explorica claims that Elderhostel's recent rebranding and adoption of the EXPLORITAS mark is likely to cause confusion, mistake or deception or otherwise suggest an affiliation between the companies among consumers. As a result, Explorica contends that Elderhostel's use of the name EXPLORITAS violates Explorica's established rights in its trademark, EXPLORICA.  Explorica asserts that Elderhostel's actions constitute unlawful trademark infringement under Federal law and dilution and unfair competition under state law.  Elderhostel disputes these claims.  Explorica seeks an injunction preventing Elderhostel from using the EXPLORITAS name and monetary damages in the form of an award of defendant's profits and an monetary award for corrective advertisement to dispel the confusion caused by Elderhostel.

LIBA/2064377.1