UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EXPLORICA, INC.

           Plaintiff,

v.

ELDERHOSTEL, INC.
d/b/a EXPLORITAS,

           Defendant.

Civil Action No. 09-11719-RGS

## JURY INSTRUCTIONS

Defendant Elderhostel requests that this Court give the following Proposed Instructions to the jury in the captioned action.

## 1.    Introduction

Members of the jury, now that the closing arguments of the lawyers have been presented, the time has come for me to instruct you on the law. My instructions will be in four parts. First, some instructions on the general rules that define and control the duties of a jury in a civil case. Second, some instructions that you may find of use in evaluating the evidence that has been presented. Third, I will explain the rules of law that you must apply to the facts as you find them. Finally, I have some brief guidelines that govern the conduct of your deliberations.[1]

---

[1] See Transcript of Record at 92, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D. Mass. Jul. 31, 2007) (jury instructions).

2.      **<u>General Rules</u>**

In defining the duties of the jury, let me first repeat the general rules. It is your duty to find the facts from all of the evidence in the case. To the facts as you find them, you must apply the law as I give it to you. You must follow the law as I describe it to you, whether you personally agree with the wisdom of the law or not. And you must do your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you and according to the law.

You must follow all of my instructions and not single out some and ignore others. They are all equally important, and you must not read into these instructions or anything I may have said or done during the course of the trial, as any suggestion from me as to the verdict you should return. That is a matter entirely up to you. Whatever opinion I might have is totally irrelevant. The verdict is yours, and yours alone, as the finders of fact to decide. While I intend to be as helpful as I can in providing you with the knowledge of the law that you will require to render an intelligent verdict, you will, when I am finished, be surprised, even astonished, at the extent to which the law commits this case to your sole judgment as the finders of fact.[2]

---

[2] <u>See</u> Transcript of Record at 92-93, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

3.       **The Parties**

Plaintiff, as I have explained, is the name that we give to the person who brings a lawsuit. We refer to the person sued as the defendant.  Under our civil law the parties to a lawsuit can be legal entities, like corporations and partnerships.  In our case the plaintiff, Explorica, as well as the defendant, Elderhostel, are corporations.  A corporation, of course, can act only through its agents and employees.  Consequently, the law holds a corporation responsible for any corporate act that falls within the scope of an authorized agent or employee.  That the parties are legal entities should not be a factor in reaching a verdict.  A corporation stands before the Court in the same shoes as a natural person, with the same legal rights and the same duties and responsibilities.[3]

---

[3] See Transcript of Record at 93-94, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

4.    **What Is And Is Not Evidence**

Now let me briefly review with you what is and is not evidence in a civil case. Evidence is typically presented during a trial in one of three ways. First, through the sworn testimony of witnesses, both on direct and on cross-examination. Second, through physical objects that are identified by a witness and admitted as exhibits during the trial, either by agreement of the parties or by the Court. Third, by a stipulation or agreement between the parties that certain facts are true and need not be independently proven as such at trial.

Certain things are not evidence and should have no bearing on your verdict. Arguments and statements by lawyers, as I have cautioned several times, are not evidence. What the lawyers have said over the course of the trial you may find helpful, even persuasive, in reaching a judgment, but the facts are to be determined solely from your own evaluation of the witness's testimony, the exhibits, and any reasonable inferences that you draw from the facts as you find them.

Questions to the witnesses are not evidence. They can only be considered in the sense that they give context or meaning to witness's answer.

Objections to questions are not evidence. Attorneys, as I explain at the beginning of the trial, have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that and objection was made or by the way I ruled on it. If I "sustained" the objection, you should disregard the lawyer's question and any assertion of fact that it might have contained. If I "overruled" the objection, you should treat the witness's answer as any other.

Testimony that I exclude, struck, or that I instructed you to disregard is not evidence. You should also, as I have cautioned from time to time during the trial, ignore editorial

comments made by the attorneys during their examinations, particularly those that are intended to characterize the testimony of witnesses.  Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.

Notes, if you keep kept them, and I think most, if not all, of you have, are not evidence. They are your personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence.  You must decide the case based solely on the evidence offered and received during the trial itself.[4]

---

[4] See Transcript of Record at 94-96, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

5.    **<u>Direct Evidence</u>**

Regardless of the way in which evidence is presented, it comes in one of two forms, as either direct or circumstantial evidence.  Direct evidence, you will recall, is direct proof of a fact, usually presented through the testimony of a person who claims to have been an eyewitness to an event or a participant in a conversation.  When you evaluate direct testimony, your decision is fairly straightforward.  Do you believe that what the witness has told you is accurate?[5]

---

[5] <u>See</u> Transcript of Record at 96, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

6.    **Circumstantial Evidence**

Circumstantial evidence, on the other hand, is the proof of a chain of circumstances or set of facts from which you could infer or conclude that another fact is true even though you have no direct evidence of that fact.

For instance, if you were to awake in the morning and, even though the day was bright and clear, see puddles of water on the street, you may draw the inference that it had rained during the night, even though your sleep had been uninterrupted.  In other words, the fact of rain is an inference that could be drawn from the presence of water on the street.  An inference may be drawn, however, only if it is reasonable and logical and not if it is speculative or based upon conjecture.  If, for example, you observe puddles of water on your street but not on any other street in your neighborhood, other facts, like a broken water main or, if you live in the suburbs, a neighbor's malfunctioning sprinkler system might explain the presence of water.

In deciding whether to draw an inference, you must look at and consider all the facts in the case in the light of reason, common sense, and your own life experience.  Neither type of evidence, direct or circumstantial, is considered superior or inferior to the other.  Both types of evidence may be considered in reaching your verdict and may be given whatever weight you as the finders of fact deem that evidence to be worth.[6]

---

[6] See Transcript of Record at 96-97, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

7.    **Witness Credibility**

Most evidence, as you learned, is received at trial through the testimony of witnesses.  As the jury, you are the sole judges, as I have explained, of the credibility of those witnesses.  If there are inconsistencies in the testimony, it is your function to resolve any conflicts and to decide where the truth lies.

You may choose to believe everything that a witness said, or only part of it, or none of it.  If you do not believe a witness's testimony that something happened, that, of course, is not evidence that it did not happen.  It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

Often it may not be so much what a witness says but how he or she says it that might give you a clue whether or not to accept his or her version of an event as believable.  You may consider a witness's character, his or her appearance and demeanor on the witness stand, his or her frankness or lack of frankness in testifying, whether the witness was contradicted by anything that he or she said before the trial, and whether his or her testimony is reasonable or unreasonable, probable or improbable, in light of all the other evidence in the case.

You may take into account how good an opportunity the witness had to observe the facts about which he or she testifies, the degree of intelligence the witness shows and whether his or her memory seems accurate.  You may also consider the witness's motive for testifying.  Whether he or she displays any bias in doing so, or whether he or she has any interest in the outcome of the case.

Now, simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as he or she recalls it or believes it to have been.  But a witness's interest in the case is a factor that you may consider along with everything else.

You may also consider the fact that a witness may be perfectly sincere in his or her account of an event and simply be mistaken as to the truth.[7]

---

[7] See Transcript of Record at 97-98, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

8.     **Expert Witnesses**

As a rule, a witness is not permitted to offer an opinion about the facts to which he or she testifies unless it concerns a matter falling within our common everyday experience. An exception is made for those who are asked to testify as experts.

These are witnesses who by education, and experience have acquired specialized knowledge in some art, science or calling. These witnesses are permitted to give opinions about matters falling within their particular expertise, and they may also give reasons for those opinions. This type of testimony is allowed in the belief that the knowledge of certain experts are so specialized that the facts that they have mastered are beyond the collective knowledge of the Court and the jury.

The credibility of the testimony of an expert witness, however, is judged just like that of any other witness. Simply because the law allows a witness to give an opinion does not mean that you must accept that opinion. If you decide that the opinion of an expert witness is not based on sufficient education or experience, or if you conclude that the reasons given for the opinion are not convincing or are outweighed by other evidence in the case, you may disregard that opinion entirely.[8]

---

[8] See Transcript of Record at 99, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

9.    **Weight of the Evidence**

Now, the weight of the evidence, obviously, does not depend on the number of witnesses testifying for one side or the other.  You must determine the credibility of each witness who testifies and then reach a verdict based on all of the believable evidence in the case.[9]

---

[9] See Transcript of Record at 99-100, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

**10.**     **Burden of Proof Is Proof by a Preponderance of the Evidence**

I'm going to now turn to the governing law.  In the course of this discussion, I want to remind you of something I told you at the beginning of the trial.  I am going to be talking about the burdens of proof and it is the same burden of proof that applies to all instances in this case, and that is proof by a preponderance of the evidence.  You will see from these instructions that there are circumstances in which that burden may shift from one side to the other as I explain the law to you.

Now, remember my instructions as to what preponderance of the evidence is.  It simply means more likely than not; that is, the party with the burden of proof must produce evidence which persuades you that the proposition that its evidence stands for is more likely the truth than not.  So when I talk about preponderance of the evidence, I just want to remind you of our discussion at the beginning of the trial.[10]

---

[10] See Transcript of Record at 100, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

**11.**    **Nature of Action**

This case does not involve a patent or a copyright.  Neither side is claiming that it has invented a particular product or service or that the other party has misappropriated a trade secret or proprietary technology.  The case solely involves trademarks; that is, the right to use a particular name or words in connection with a company's business.

Trademarks are regulated by a federal law called the Lanham Act.  A trademark can be formally registered with the United States Patent and Trademark Office, or the PTO as trademark lawyers would say.

Registration of a trademark with the PTO constitutes evidence that the mark is valid, that the registrant owns the mark, and that it has the exclusive right to use it for the goods or services stated in the registration.  Over time, Explorica has registered two marks that will be relevant to your deliberations.  The first is the name "Explorica" and the second is the Explorica logo in the form of the letter "E".  The registration certificates issued by the PTO for these two marks have been entered as Exhibits __ and __.  You should look to the certificates in making a determination of their scope and applicability to the goods and services they describe.[11]

---

[11] See Transcript of Record at 100, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

12.    **Definitions of Trademark and Service Mark**

A "trademark" is any word or symbol, or combination of words and symbols, used by a business to identify and distinguish its particular goods and services from similar goods and services marketed by others.

The term "service mark," which you have heard from time to time during the trial is often used to signify a service as opposed to a product provided by a business, but the concept is the same with respect to the goods and services and trademarks.[12]

---

[12] See Transcript of Record at 101-02, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

13.    __Trademark Infringement__

The trademark laws prohibit a competitor from using the same or a similar mark in a way that confuses the public about the origin of goods or services being offered for sale. The purpose of the law is to protect a business against a competitor who might seek to exploit the goodwill, reputation, and customer base of another business by appropriating or imitating its name. Confusion about origin exists when a buyer exercising reasonable care is misled into a purchase in the belief that a service or product was being offered by a business other than the one that actually placed the product or service on the market.

When a business establishes ownership of a trademark, it acquires the right to exclude others from using that mark. The owner of a trademark may enforce the right to its exclusive use by bringing an action of trademark infringement against a competitor using the same or a similar mark.

In this case, to find infringement, you must be persuaded by plaintiff, Explorica, that it has established by a preponderance of the evidence that it uses, and thereby owns, one or more marks based on the term "Explorica"; That it had established the name "Explorica" as a trademark before defendant Elderhostel began using the same or a similar name; and, Third, that Elderhostel's use of its own trademark "Exploritas" is likely to confuse a reasonably sophisticated purchaser in the market to the harm of Explorica.[13]

---

[13] See Transcript of Record at 102-03, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

14.     **Distinctiveness**

There are limitations on what the trademark law protects.  A generic term, for example, like "aspirin," cannot be claimed as a protected mark.  To be claimed as a trademark, a term must be inherently distinctive or have what the law calls "secondary meaning."  Marks that are inherently distinctive include coined words like "Exxon" or "Clorox," or fanciful, arbitrary or suggestive terms like "Chicken of the Sea."

A trademark can be a word or combination of generic words used in a distinctive way with respect to a particular product or service.  The words "vodka" and "banana," for example, are generic words, but a banana-flavored vodka marketed as "Vodkana" might be claimed as a protected mark if the vodka-consuming public came to associate the name "Vodkana" with a product of a particular manufacturer of vodka.

Trademark law also does not protect purely descriptive terms.  A term like "chicken-flavored rice" is descriptive because it convey an immediate idea of the ingredients, qualities or characteristics of the product to which it refers without any leap of imagination on a consumer's part.  Sellers of goods and services simply are not permitted to stake claim to descriptive words or phrases in ways that would limit the ability of other sellers to emphasize the characteristics of their own goods, services, or business.  Language and available words are, of course, not infinite, and the law recognizes the critical importance of preserving a free marketplace of useful words.

Deciding whether a mark is distinctive or descriptive requires consideration of the meaning of the term to prospective consumers in the market to which the goods and services are targeted.  A descriptive term might have a distinctive meaning in one market and yet have a non-distinct meaning in another.  Think of the term "Apple," an example that you heard before.  When used to describe the purchase of a particular brand of computer, it has a distinctive

meaning, but in the context of grocery shopping, it is simply and purely descriptive. In other words, a descriptive term like "Apple" or "Chapstick" can acquire a secondary meaning through the owner of the mark to persuade the consuming public that its mark identifies goods and services originating from a single source. That simply means that a plaintiff must show that in the minds of the relevant public, the primary significance of a term is to identify the source of the product rather than the product or the service itself.

If defendant Elderhostel has persuaded you that the "Explorica" marks are not suggestive or arbitrary but merely descriptive, it is open to Explorica, nonetheless, to show that the "Explorica" marks had, nevertheless, achieved a secondary meaning in a significant portion of the market for its modeling software and consulting services. A "significant portion" does not mean all relevant consumers or even necessarily a majority of such consumers. What constitutes a significant portion of the relevant market is an issue for you to decide from the evidence you have heard about the market in which the goods and services offered by Explorica are sold.

In determining whether the "Explorica" mark had achieved secondary meaning, you may consider the following factors, among others: The history and manner and use of the mark; The nature, extent, and effectiveness of efforts to advertise and promote the mark as a brand name; The extent to which those efforts have led Explorica's goods and services to achieve success, prominence, and critical acclaim in the relative market; Explorica's market presence and volume of sales; and, The results of consumer surveys, if any.

As a rule, ownership of a mark belongs to whoever make first use of the mark in a given market. We refer to the first user of the mark as the "senior holder." The use of a mark must be conspicuous enough that a consumer would understand that it was intended to signify the goods and services offered by the owner of the mark. In this regard, Explorica must satisfy you that its

use of the "Explorica" mark acquired secondary meaning prior to Elderhostel's first use of its "Exploritas" mark.[14]

---

[14] <u>See</u> Transcript of Record at 103-06, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

15.    **Likelihood of Confusion**

You must then decide whether Explorica has shown by a preponderance of the evidence that Elderhostel has used its own trademark, "Exploritas," in a manner that is likely to cause confusion regarding the true source of Explorica's products and services. This, of course, requires you to make the preliminary determination that Explorica and Elderhostel offer the same or similar services.[15]

The word "confusion" in trademark law has a very specific meaning. It refers to the act of mistaking one thing for another, or failing to note distinctions, and to falsely identify.[16] To show a likelihood of confusion, Explorica must prove a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.[17] Confusion resulting from the consuming public's carelessness, indifference, or ennui will not suffice.[18]

"Likely" means probable. It is not enough that confusion is merely possible. A plaintiff must show that it is more likely than not that a significant portion of the relevant consuming public who use reasonable care in identifying the source of the goods and services that they purchase will be confused. In deciding whether there is a likelihood of confusion, you may consider both the sophistication of the consumers to whom the parties' trademarks are directed and the nature of their purchasing decisions.[19]

---

[15] See Transcript of Record at 106-07, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[16] See Transcript of Record at 107, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[17] Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

[18] Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996).

[19] See Transcript of Record at 108, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

16.    **Types of Confusion**

Explorica claims that Elderhostel's mark will cause confusion among consumers in several ways.  First, Explorica contends that potential customers of Elderhostel are likely to make purchasing decisions about its services under the mistaken belief that they are associated with Explorica.

Explorica also claims that Elderhostel's use of its mark "Exploritas" in its business is likely to cause potential customers of Explorica to mistakenly believe that Elderhostel is the source or sponsor of Explorica's goods and services.  This claim is one of "reverse confusion." In other words, Explorica maintains that Elderhostel so saturated the market by its advertising and promotion of the "Exploritas" name, that potential customers are likely to be misled into thinking that Explorica's good and services, in fact, originate from Elderhostel.[20]  Explorica has the burden of proof on this issue.[21]

Explorica's burden is to prove likely confusion of a kind that would threaten the commercial interests of the owner of the mark.[22]  That is, confusion must exist among relevant consumers—prospective purchasers of plaintiff's or defendant's goods or services, persons in a position to influence purchasing decisions, or other persons whose confusion is shown to threaten the plaintiff's commercial interests.[23]

---

[20] See Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 38 (1st Cir. 2006); see also Transcript of Record at 107, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).
[21] Riverbank, Inc. v. River Bank, 625 F.Supp.2d 65 (D.Mass. 2009) ("[I]n either case, "forward confusion" or "reverse confusion," the plaintiff must establish likelihood of confusion.").
[22] Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 16 (1st Cir. 2004).
[23] Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 16-17 (1st Cir. 2004); Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207-08 (1st Cir. 1983).

You may also consider a number of additional factors.  No one factor or consideration is conclusive.  Each factor that you find relevant must be weighed in the light of the totality of the evidence in the case.[24]

---

[24] <u>See</u> Transcript of Record at 108, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

17.    **Similarity of Marks**

First, you may consider whether and to what extent the parties' marks are similar or different.  This involves both a literal comparison of the marks themselves and also a consideration of the total effect the mark is likely to have on a reasonable consumer.  You should consider the way in which potential customers would typically encounter the parties' marks makes it more or less likely that a consumer would mistakenly perceive from the Elderhostel mark that there is a relationship between Elderhostel and Explorica.[25]

In considering the similarity of the marks, you must consider the total effect of the designation, rather than a comparison of individual features.[26]  This means that you should consider not just the words "Explorica" and "Exploritas" in isolation, but should also look at how the words appeared in the marketplace by viewing them together with the logos of Explorica and Elderhostel.[27]

---

[25] See Transcript of Record at 108, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).
[26] Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981).
[27] Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996); Pignons, 657 F.2d at 487.

18.    **Similarity of Goods or Services**

Second, you may consider whether and to what extent there are similarities and differences in the goods or services offered by the parties, the channels of trade in which they do business, the places where they advertise, and the potential customers or clients that they target.[28]

You should also consider whether the companies are competitors in any meaningful sense, and you should consider not simply whether there are similarities or differences between the companies' businesses, but whether those similarities or differences make it more or less likely that a consumer would mistakenly believe that Elderhostel is the source or sponsor of Explorica products or services.[29]

Keep in mind that if described in general enough terms many products or services could be made to appear in the same class.[30]  In determining whether the companies' services are similar, you should not consider broad characterizations of their services; instead, consider the particular services provided by each company.  For example, broad characterizations of services, such as "travel" or "educational services" do not indicate that the actual provided services are similar.[31]  The question is whether the products or services are closely competitive enough to

---

[28] See Transcript of Record at 108-09, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[29] See Transcript of Record at 109, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[30] See Transcript of Record at 109, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[31] Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993) (no likelihood of confusion even though both goods were broadly considered "gardening equipment."); Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983) ("[Plaintiff's] registered mark does not allow it to pre-empt the whole broad field of health care products."); Pignons, 657 F.2d at 487-88 ("Both the products in this case are single lens reflex cameras; otherwise they have little in common."); Riverbank, Inc. v. River Bank, 625 F. Supp. 2d 65, 72 (D. Mass. 2009) (disregarding broad characterization of parties' services as "financial services" and finding them dissimilar); Mejia and Associates, Inc. v. IBM Corp., 920 F. Supp. 540, 548 (S.D.N.Y. 1996) (argument that both parties offer "educational services" is "so broad as to be meaningless for purposes of determining that the products are proximate."); Windsor, Inc. v. Intravco Travel Centers, Inc., 799 F. Supp. 1513, 1523 (S.D.N.Y. 1992) (finding no likelihood of confusion between a tour operator of prepackaged tours and one that designs custom tours).

create a likelihood of confusion in the mind of a purchaser involved in the selection of the goods

or services.[32]

---

[32] <u>See</u> Transcript of Record at 109, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

19.    **Natural Zone of Expansion**

[**Elderhostel does not believe an instruction on this legal theory is appropriate as it has not been adopted by the First Circuit. If the court desires an instruction on this subject, Elderhostel proposes the following**]

A trademark owner may not monopolize markets that its trade has never reached.[33] If, however, a trademark owner presents concrete evidence of expansion plans[34] into a related market that would be a natural and accepted area of expansion, it may have certain rights in that new market. Those concrete plans must show a strong possibility of expansion into this naturally related market and sales in this new market must be significant.[35] Even if such concrete plans are shown, however, if the new user adopted its mark in good faith, there would be no infringement under this theory.[36]

---

[33] Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 416 (1916); Raxton Corp. v. Anania Assoc., Inc., 635 F.2d 924, 930 (1st Cir. 1980).

[34] Survivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 634 (9th Cir. 2005); see Savin Corp. v. Savin Group, 391 F.3d 439, 460 (2d Cir. 2004).

[35] M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005).

[36] Raxton Corp. v. Anania Assoc., Inc., 635 F.2d 924, 930 (1st Cir. 1980) (citing cases)

**20.    <u>Overlap of Channels of Advertising and Trade</u>**

You may also consider whether the parties' channels of trade or advertising overlap.  For the parties' channels of trade to overlap, the parties' services must be available at the same places.  For example, if two companies sell cameras, and one party sells cameras only at specialty camera stores, and the other party sells cameras at specialty stores and discount stores, the only overlap between the parties channels of trade is at the specialty camera stores.[37]

Similarly, for the parties channels of advertising to overlap, the parties' advertising must appear in the same places.  For example, if two companies sell cameras, and one party advertises its cameras only photography magazines, and the other party advertises its cameras in photography magazines and general audience magazines (e.g., People, Time, and Newsweek), the only overlap between the parties channels of advertising is in the photography magazines.[38] The fact that both parties may use the Internet to market their services "insufficient evidence to prove that the parties have used similar channels of trade."[39]

---

[37] <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482, 488 (1st Cir. 1981).
[38] <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482, 488 (1st Cir. 1981).
[39] <u>U.S. Conference of Catholic Bishops v. Media Research Ctr.</u>, 432 F. Supp. 2d 616, 627-28 (E.D. Va. 2006).

**21.**    <u>**Similarity of Potential Customers**</u>

When considering likelihood of confusion you should consider whether there is a similarity on the classes of prospective purchasers.[40]  That is, are the parties going after the same customers?  If the answer is yes, this factor favors Explorica.  If the answer is no, this factor favors Elderhostel.

---

[40] <u>Beacon Mut. Ins. Co. v. OneBeacon Ins. Group</u>, 376 F.3d 8, 14 (1st Cir. 2004).

**22.**    **Care Exercised By Potential Customers**

When considering potential customers, you may consider that there is less likelihood of confusion where goods or services are expensive, and purchases are made after careful consideration, rather than on impulse.[41]  For example, the average purchaser of an expensive item will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a candy bar.[42]

---

[41] Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1206 (1st Cir. 1983).
[42] Fisher Stoves, Inc. v. All Nighter Stove Works, 626 F.2d 193, 194 (1st Cir. 1980); see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 489 (1st Cir. 1981).

23.    **Actual Confusion**

Third, you may consider whether consumer confusion has actually occurred.  Although evidence of actual confusion is often deemed the best evidence of likely future confusion, it is important to evaluate the amount of actual confusion relative to what might be expected.  For example, where a business has operated for several years or has a large volume of sales, the existence of only a few isolated incidents of actual confusion is less than would be expected, and therefore suggests that the marks are not confusingly similar.[43]

Additionally, evidence of actual confusion is not significant where the confusion was only temporary and did not affect the purchaser's ultimate decision about whether to buy a product – it must be commercially relevant to Explorica.[44]  For example, where consumers are temporarily confused about whose website they are visiting but "realize they are at the wrong site and go to an Internet search engine to find the right one" this is not enough to show likelihood of confusion.[45]

---

[43] Black Dog Tavern Co., Inc. v. Hall, 823 F.Supp. 48, 56 (D.Mass. 1993) (a few isolated incidents of actual confusion over two years weighs against likelihood of confusion); see also Hasbro, Inc. v. Clue Computing, Inc., 66 F.Supp.2d 117, 124 (D.Mass. 1999), aff'd, 232 F.3d 1 (1st Cir. 2000) (three emails over four years not enough); Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207-08 n.1 (1st Cir. 1983) (two instances over five years not enough) (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1231 (3rd Cir. 1978) (nineteen misdirected letters over four years not enough), overruled on different grounds, Shire US Inc. v. Barr Laboratories, Inc., 329 F.3d 348, 352 n.10 (3rd Cir. 2003)).

[44] Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207-08 (1st Cir. 1983) (two instances of actual confusion over five years not enough, especially where confusion only temporary and did not affect ultimate purchasing decision)

[45] Riverbank, Inc. v. River Bank, 625 F.Supp.2d 65, 74 (D. Mass. 2009).

24.    **Strength of the Mark**

Fourth, you may consider the "strength" of the Explorica mark.  This means considering whether the word "Explorica" itself is likely or not to be perceived by reasonably sophisticated consumers in the travel services market as identifying Explorica as a source of the goods or services bearing the "Explorica" name.[46]

A mark is weakened where there are many marks that are similar to it.[47]  For example, the name "Northern Trust" would not be a strong mark for a bank if many banks use the word "Northern" in their titles.[48]  Conversely, the name "Copy Cop" would be stronger if it were unusual for companies in the field of printing or copying services to use logos featuring policemen or the word "cop".[49]

Additionally, a mark is weakened where many third parties use a prefix or suffix which is the same or similar to the mark being asserted.[50]  For example, a mark containing the "-jet" suffix for spray equipment would be weakened if there were many third parties in the same field who used the same suffix because such widespread use may indicate the suffix is merely descriptive.[51]  Therefore, you may consider whether third parties in the travel services field use all or parts of the "Explorica" mark when evaluating the mark's strength.[52]

---

[46] See Transcript of Record at 109-110, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

[47] Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 32 (1st Cir. 1989).

[48] Northern Trust Corp. v. Northern Bank & Trust Co., No. 89-3052-T, 1991 WL 346397 (D.Mass. Nov. 26, 1991) (denying preliminary injunction where defendant proved that at least thirty other banks use "Northern" in their name").

[49] Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37 (D.Mass. 1995) (finding mark "Copy Cop" stronger because there were few "cop" registrations in the photocopying space).

[50] First Sav. Bank, F.S.B. v. First Bank System, Inc., 101 F.3d 645, 654 (10th Cir. 1996) (extensive third-party use of terms FIRST, BANK and FIRST BANK in financial services suggest that FIRST BANK is a weak term in the field).

[51] Spraying Systems Co. v. Delavan, Inc., 975 F.2d 387 (7th Cir. 1992) (affirming finding that "-jet" suffix was merely descriptive because of third-party use).

[52] CITE

**25.**    **<u>Elderhostel's Own Trademark Registration for EXPLORITAS</u>**

As you have heard in this case, Elderhostel has its own federal trademark registration for "Exploritas" which was approved by the U.S. Trademark Office.  As part of your deliberations into the questions such as likelihood of confusion and willfulness, you are entitled to give weight to the decision of the Trademark Office to register "Exploritas" over the existing registration for "Explorica."[53]

---

[53] <u>M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha</u>, 250 F. Supp. 2d 91, 99 (E.D.N.Y. 2003) (holding that the PTO's decisions regarding likelihood of confusion are entitled to "great weight"); <u>Reed-Union Corp. v. Turtle Wax, Inc.</u>, 869 F. Supp. 1304, 1310 (N.D. Ill. 1994).

26.   **Damages**

[**It is Elderhostel's position that damages should not be included in this expedited trial directed at the issues raised in the preliminary injunction motion.  Should the court determine damages are at issue in the trial Elderhostel will submit its proposed jury instructions on damages.**]

**27.**    <u>Willful Infringement</u>

[**It is <u>Elderhostel's position that willfulness should not be included in this expedited trial directed at the issues raised in the preliminary injunction motion.  Should the court determine willfulness is at issue in the trial Elderhostel proposes the following jury instructions.**</u>]

Finally, if you find infringement, but only if, you are asked to make a separate determination whether Elderhostel's conduct was willful.  To establish willfulness, Explorica must prove by a preponderance of the evidence that Elderhostel knew of the "Explorica" mark; that Elderhostel either knew or was deliberately indifferent to the fact that it would infringe the "Exlporica" mark; and, that it intentionally launched the "Exploritas" campaign despite such a state of mind.[54]

---

[54] <u>See</u> Transcript of Record at 112, <u>Visible Systems Corp. v Unisys Corp.</u>, No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

**28.**    <u>Explorica's Claims Under Massachusetts Trademark Law</u>

[** Given that Massachusetts trademark law is coextensive with federal trademark law Elderhostel's position is that no separate instruction is needed.  If, however, the court wishes to give one, Elderhostel recommends the following**]

In addition to its federal claims, Explorica has also raised claims under Massachusetts trademark law.  Those claims are the same as the federal claims.  If you find no federal trademark infringement, then there is also no infringement under state trademark law.[55]

---

[55] <u>Coca-Cola Co. v. Snow Crest Beverages</u>, 162 F.2d 280, 283 (1st Cir. 1947); <u>S.S. Kresge Co. v. United Factory Outlet, Inc.</u>, No. 76-2450-MA, 1980 WL 30273, at *2 (D. Mass. 1980) ("The defendants' claims to exclusive rights in "The Mart" in Worcester county first touch on the basic principles of common law trademarks. As in the area of unfair competition, the federal and Massachusetts statutory and common law rules are substantially the same.")

29.    **Explorica's Under Massachusetts Unfair Competition Law**

[** Given that Massachusetts unfair competition law is coextensive with federal trademark law for purposes of this case, Elderhostel's position is that no separate instruction is needed. If, however, the court wishes to give one, Elderhostel recommends the following**]

Explorica has also raised claims under Massachusetts unfair competition law. Those claims are also the same as the trademark claims. If you find there is no trademark infringement, then there has been no unfair competition either.[56]

---

[56] McKernan v. Burek, 118 F.Supp.2d 119, 125 (D. Mass. 2000); Black Dog Tavern Co., Inc. v. Hall, 823 F.Supp. 48 (D. Mass.1993) (holding that a parody of a protected mark which did not create source confusion and therefore, did not breach federal trademark law, did not violate M.G.L. ch. 93A).

**30.**    **Jury Deliberations**

Each of you must decide the case for yourself, but you should do so only after considering all of the evidence, after discussing it fully with the other jurors, and after listening to the views of your fellow jurors.  Do not be afraid to change your opinion if, after hearing the opinions of your fellow jurors, you are convinced that your initial conclusion was wrong, but do not come to a decision simply because other jurors insist that it is right or surrender an honest belief about the weight and effect of the evidence simply for the expedience of reaching a verdict.[57]

---

[57] See Transcript of Record at 112-13, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

**31.**     **Jury Verdict Must Be Unanimous**

This case, as you saw, has taken a great deal of time and effort on the part of the

attorneys involved.  There is no reason to think that the case could have been better tried – it

was, in fact, very well tried – or that another jury would be better qualified than you are to decide

it.  It is important, therefore, that you reach a verdict, if you can do so conscientiously.  Your

verdict must be unanimous as to each of the special questions I am going to ask you to answer.[58]

---

[58] See Transcript of Record at 113, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

**32.** __Special Verdict__

Your answers will be recorded on the official verdict slip which will be in the back of the book of instructions.  Let me stress at the outset that there are no subliminal messages conveyed in any of the questions.  All I've tried to do is lay out an agenda for you that would give a rational order to your deliberations and the way you conduct your discussions.  A simple example is it would make no sense to spend three or four hours debating damages in the case and suddenly conclude there was no liability.  So I just tried to put things in an order of logical progression.

The first question that you will be asked to answer is whether Explorica has proven by a preponderance of the evidence that Explorica's use of its mark and Elderhostel's use of its mark are substantially similar  If you answer that question "Yes," you will go to Question 2. If the answer is "No," that's the verdict.

The second question is whether Explorica has established by a preponderance of the evidence that a substantial number of reasonably prudent customers are likely to be confused by the similarity between the trademarks shown above into mistakenly believing that Elderhostel is the source or sponsor of Explorica's services?  Again, if you answer that question "Yes," you will go to Question 3.  If the answer is "No," that is your verdict.

The third question is whether Explorica has established that Elderhostel, in adopting the EXPLORITAS mark, willfully intended to deceive potential customers or to improperly benefit from Explorica's reputation, and this is simply a "Yes" or "No" answer.[59]

---

[59] See Transcript of Record at 113-115, Visible Systems Corp. v Unisys Corp., No. 04-cv-11610-RGS (D.Mass. Jul. 31, 2007) (jury instructions).

Respectfully submitted,

ELDERHOSTEL, INC.

By its attorneys,

Dated:  February 11, 2010

/s/ Michael A. Albert
Michael Albert, BBO #558566
malbert@wolfgreenfield.com
Allen Rugg, BBO #674484
arugg@wolfgreenfield.com
Jeffrey C. O'Neill, BBO #663254
joneill@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: 617.646.8000
Fax: 617.646.8646

Ilan N. Barzilay, BBO # 643978
ibarzilay@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA  02210
Tel: 617.946.4800
Fax: 617.946.4801

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert