IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EXPLORICA, INC.

Plaintiff,

v.

ELDERHOSTEL, INC.
d/b/a EXPLORITAS,

Defendant.

Civil Action No. 09-11719-RGS

**DEFENDANT ELDERHOSTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INFRINGEMENT, NO WILLFUL INFRINGEMENT, AND NO DILUTION**

## I. RELIEF REQUESTED

As a matter of law, Explorica has failed to meet its burden of proving its claims for federal, state, and common law trademark infringement, for false designation of origin, for state law trademark dilution, and for unfair competition. Elderhostel respectfully requests that the Court enter judgment as a matter of law that Elderhostel has not infringed or diluted the EXPLORICA mark, has not falsely designated the origin of any goods or service, has not unfairly competed, and in the alternative requests that the Court enter judgment as a matter of law that Elderhostel has not willfully infringed the EXPLORICA mark. Elderhostel requests judgment in its favor on all claims.

## II. STATEMENT OF APPLICABLE LAW

Judgment as a matter of law is granted when "the evidence…is such that reasonable persons could reach but one conclusion." Casillas-Diaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006).

To prove infringement, a plaintiff must show 1) that he uses, and thereby "owns," a mark, 2) that the defendant is using that same or a similar mark, and 3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff." DeCosta v. Viacom Int'l, Inc., 981 F.2d

602, 605 (1st Cir. 1992). Explorica had the burden of showing that Elderhostel's use of its own federally registered trademark would cause "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). "[C]onfusion resulting from the consuming public's carelessness, indifference, or ennui will not suffice." Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996).

Explorica's Counts I-IV, and VI require Explorica to prove a likelihood of confusion, which it has not done. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981) ("Likelihood of confusion is thus an essential element of a claim of trademark infringement, whether asserted under Massachusetts or federal law;" Counts I and III); National Nonwovens, Inc. v. Consumer Prods. Enters., Inc., 397 F. Supp. 2d 245, 257 (D. Mass. 2005) (To prove False Designation of Origin (Count II), a plaintiff must prove "(1) the ownership of a distinctive mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the origin of the goods or services."); New England Cord Blood Bank, Inc. v. Alpha Cord, Inc., No. Civ.A. 03-11662-GAO, 2004 WL 222357, at *5 (D. Mass. Jan. 21, 2004) ("Because NECBB cannot demonstrate a likelihood of confusion, it cannot show a likelihood of success on the merits of its statutory and common law trademark and unfair competition claims." Counts III, IV, & VI.).

The First Circuit typically assesses eight factors when determining likelihood of confusion: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." See Pignons, 657 F.2d at 487; accord Boston Duck Tours, 531 F.3d at 10.

## III. NO LIKELIHOOD OF CONFUSION

The undisputed facts here show non-infringement at least as strongly as the facts in Pignons, where the First Circuit upheld the Court's summary judgment of non-infringement. Elderhostel is entitled to a judgment of non-infringement as a matter of law.

**A.      The Marks Are Different.**

The parties' marks, like the "ALPA" and "ALPHA" considered in Pignons, are sufficiently different that prudent purchasers exercising ordinary care would not be confused.

1.      "EXPLOR" is Generic and Highly Diluted.

"[A] trademark infringement finding . . . cannot be based on the use of a generic or descriptive term." Am. Cyanamid Corp. v. Connaught Labs., Inc., 800 F.2d 306, 308 (2d Cir. 1986) (finding no likelihood of confusion between HibVAX and HIB-IMUNE); see also Boston Duck Tours, 531 F.3d at 25 ("Allowing 'duck tours' to largely drop out of the analysis" of the BOSTON DUCK TOURS mark); Bada Co. v. Montgomery Ward, 426 F.2d 8, 11 (9th Cir. 1970) ("word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller.").

A term widely used in a given industry is given little, if any, weight in determining similarity. Boston Duck Tours, 531 F.3d at 25-26 ("we focus our inquiry, albeit not exclusively, on the similarities and differences between the words 'Boston' and 'Super,' … [a]llowing 'duck tours' to largely drop out of the analysis … the marks are reasonably dissimilar because the shared element in each party's mark is the generic phrase 'duck tours.'"). "[T]he more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer." Colt Defense LLC v. Bushmaster Firearms, Inc., 486 F. 3d 701, 706 (1st Cir. 2007) (noting that "at least fifteen gun manufacturers use M4 to describe their products"); see Boston Duck Tours, 531 F.3d at 19.

The word "explore" is a generic term that is descriptive of the services provided by the parties – each party allows people to explore new places, cultures, and ideas. (Frommer Decl. ¶ 23). Explorica admitted that "travel-related businesses commonly use the term 'explore' in a

descriptive sense to promote to consumers the notion that their products are used on or in connection with 'exploring' the world." (Exhibit 198 at 4; see Day 2 Tr. 92:2-4 (Mr. Olsson admitted that Exhibit 198 was filed on Explorica's behalf)). Because the terms are descriptive, they are used by hundreds of companies in the travel industry such as Exploria, Explorita, Explorize, Exploradus, Exploriada, and Explorient. (Testimony of Huston & Frommer). The use of words with "explor" in them cannot be used to distinguish these hundreds of companies in the travel industry, and cannot form a sufficient basis for a finding of infringement. See Boston Duck Tours, 531 F.3d at 25; Am. Cyanamid, 800 F.2d at 308; see also Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1143-44 (9th Cir. 2002) ("that the marketplace is replete with products using a particular trademarked word indicates… that consumers will not be confused by its use.").

2. Substantially Different Suffix is Distinguishing.

The First Circuit has regularly found or affirmed findings of no likelihood of confusion where marks differed only in a suffix, even where the parties used the marks for much more similar products or services than is the case here. For example, in Sarah Coventry, Inc. v. Sardelli & Sons, Inc, the parties sold "essentially identical jewelry" under the marks SARAH and SARDE. 526 F.2d 20, 21, 22 (1st Cir. 1975). Although the marks differed only in suffix, the First Circuit found no likelihood of confusion because "the last two [letters were] substantially different." Id.; see also Pignons, 657 F.2d at 492 (affirming summary judgment of no likelihood of confusion between ALPA and ALPHA where both marks were used with single-lens reflex cameras); Riverbank, 625 F. Supp. 2d at 76 (no likelihood of confusion between RIVERBANK and RIVER BANK where both used for financial services).[1]

[1] Other courts routinely find or affirm findings of no likelihood of confusion in similar circumstances, even where the parties used the marks for similar products or services. See Am. Cyanamid, 800 F.2d at 308 (HibVAX does not infringe HIB-IMUNE because dissimilarity of suffixes offsets identity of prefixes); Community of Roquefort v. Santo, 443 F.2d 1196, 1199 (C.C.P.A. 1971) (finding no likelihood of confusion between ROQUEFORT and ROQUITAL where both marks used for salad dressing); Lever Bros. Co. v. Babson Bros. Co., 94 U.S.P.Q. 161, 164 (C.C.P.A. 1952) (finding no likelihood of confusion between SURF and SURGE where both marks used for

As in Sarah Coventry, the suffixes of the parties' respective trademarks are "substantially different" from one another. 526 F.2d at 22. In focus groups conducted to evaluate EXPLORITAS, not a single participant mentioned Explorica. (Day 3 Tr. 137:23-25, Day 4 Tr. 58:15-17). Explorica itself has admitted that "utilization of the word EXPLORICA, in contrast with the Registrant's EXPLORA (& design), is sufficient to distinguish the applicant's mark from the Registrant's mark and mitigate any likelihood of confusion." (Exhibit 198 at 3) (emphasis in original). Explorica stated that its "mark EXPLORICA incorporates the two additional syllables 'I-CA,' which precedes the common element EXPLOR." (Id. at 2). In light of these admissions and the other evidence presented, no reasonable jury could find that the suffixes of EXPLORICA and EXPLORITAS make the marks confusingly similar.

3. The Parties' Logos Foreclose Any Possibility of Confusion.

In considering whether two marks are similar, the court must consider "the total effect of the designation, rather than a comparison of individual features." Pignons, 657 F.2d at 487. Nearly all of the parties' customers will first learn about trips through a website or a catalog. Thus, before making a trip, nearly all customers will have first viewed one of the logos, which look nothing alike. (Day 2 Tr. 115:24-116:7 (the same Explorica logo has been on the website for at least "a couple of years.")).

The First Circuit has found that "otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer." Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996); Pignons, 657 F.2d at 487 (same); Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 3 (1st Cir. 1993) (finding that "the similarity is diluted by the frequent use of … logos").

---

detergents); Lebow Bros., Inc. v. Lebole Euroconf S.p.A., 503 F. Supp. 209, 213 (E.D. Pa. 1980) (finding no likelihood of confusion between LEBOW and LEBOLE where both marks used for clothing).

The total effect of Explorica's and Elderhostel's marks could hardly be more different from each other. (Day 4 Tr. 59:9). Explorica's logo has a modern, irreverent look to appeal to teenagers. The font has an alternative, contemporary appearance with a mix of uppercase and lowercase letters (e.g., lowercase "e" and uppercase "R") and without serifs.[2] (Day 4 Tr. 59:13-22). The final stylized "a" is designed to appear as a mirror image of the initial "e." The logo also uses bright colors to grab the students' attention, and the arrows protruding from the ends give it a further dash of style. (Day 4 Tr. 59:3-12). Mr. Olsson testified that the logo always uses the same bright orange and red when it is displayed in color, as it is on Explorica's catalogs and website. (Day 2 Tr. 105:4-9).

By comparison, Elderhostel's mark has a deliberate, reserved gravitas about it to appeal to older adults. The font itself is a "classic" font with distinct serifs. (Day 4 Tr. 56:20-25). Further, the use of all uppercase letters suggests an old-fashioned style of business and was selected to make the logo feel important. (Day 4 Tr. 56:20-25). The simple globe-like logo uses a single muted color to appeal to an older audience.

The parties' respective "e" logos also look nothing alike. The Exploritas logo clearly represents a globe. The Explorica e-logo does not – it is elongated in height with straight vertical edges. The prominent and distinctive arrows on the Explorica logo are markedly different from the round globe shape of Elderhostel's logo, which does not have arrows. Further, the Elderhostel logo is rotated at the same angle as a globe while the Explorica logo is not rotated.

No one viewing these logos would ever confuse one with the other. A reasonable jury could not find that the logos are similar or pose a likelihood of confusion and the law requires that the differences in the presentation of the logos be taken into account, reducing the overall likelihood of confusion.

4. Elderhostel's Federal Registration of EXPLORITAS Is <u>Prima Facie Evidence of Elderhostel's Right to Use Its Mark</u>.

---

[2] Serifs are "little spurs and feet on the letter forms." (Day 4 Tr. 59:21-22).

Elderhostel's EXPLORITAS mark is federally registered after having gone through a rigorous examination process by trained examiners at the Patent and Trademark Office ("PTO"). Elderhostel's registration of the EXPLORITAS mark is prima facie evidence of Elderhostel's "exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. §1057(b). In considering a trademark application, the PTO is required to compare the applicant's mark to existing marks, and will only grant the mark if it is not likely to cause confusion with existing marks. See 15 U.S.C. 1052(d). Explorica concedes that the PTO's decision in allowing EXPLORITAS is entitled to "some weight" in determining that there is no likelihood of confusion with EXPLORICA. (Memorandum In Support of Explorica's Motion in Limine to Exclude Opinions of Julia Huston at 5).

During prosecution of Elderhostel's EXPLORITAS mark, the examiner searched for all marks in the relevant classes containing "EXPLOR." (Testimony of Huston, Exhibit FP[3]). The examiner's search thus included EXPLORICA, but the examiner did not even cite EXPLORICA against the EXPLORITAS mark. The examiner's decision not to even cite EXPLORICA against EXPLORITAS adds to the overwhelming weight of evidence that the two marks are not confusingly similar. See Reed-Union Corp. v. Turtle Wax, Inc., 869 F. Supp. 1304, 1310 (N.D. Ill. 1994).

**B.    The Services Offered and Customers Served By the Parties Are Different.**

    1.    The Parties' Customers Are Different.

The jury has heard uncontested evidence regarding the parties' customers that compels the conclusion that confusion is not likely. Elderhostel is geared toward elder adult participants, typically older adults between 65-75 although it offers special programs for those in their 80s as

---

[3] The proposed exhibits referenced in the present motion have not yet been assigned trial exhibit numbers, but will be offered into evidencel on February 22, 2010.

well as programs for participants as young as 50.[4]  97.7 % of Elderhostel travelers are above age 50.  (Testimony of Z. Thomas).  The median age of an Elderhostel participant is 71.  Explorica serves traveling student groups, led by teachers and chaperones.  74% of Explorica's travelers are 21 years old or younger (Testimony of Z. Thomas), and the rest are mostly chaperones.  The median age of an Explorica traveler is 17.  (Testimony of Z. Thomas).  A visual comparison of the age of each parties' customers was presented to the jury:



**Comparison of Age of Participants (Exhibit GE)**

Explorica's customers are middle school, junior high, or high school students and Elderhostel's customers are older adults.

      Explorica's CEO Mr. Olsson drew a distinction between Explorica's North American tours and other tours, stating that the North American tours are for "more middle school groups than high schools."  (Day 2 Trial Tr. 103:22-23).  Thus Explorica's North American tours are for middle school students and its overseas tours are for high school students.

      This student focus is consistent with Explorica's representations to the PTO in applying for its trademark.  When applying for trademark registration, Explorica argued that EXPLORICA was for marketing to "students, student groups and teachers" while "the prior

---

[4] Elderhostel materials sometimes refer to "younger" participants.  At Elderhostel, "younger" means ages 50-70.  (Day 3 Tr. 107:15-17).

applicant markets to adults." (Exhibit 198 at 7). Mr. Olsson testified that the percentage of paying adult travelers of Explorica's total travel has not changed in the past decade, hovering around 10 percent. (Day 2 Tr. 126:25-8; 128:3-7). Indeed, anyone who spends even the smallest amount of time considering the companies will recognize the completely different customer bases. (Testimony of A. Frommer). Most of Elderhostel's programs are in North America (see Day 3 Tr. 101:17-19, Day 4 Tr. 10:7-8), and Mr. Olsson testified that Explorica's North American programs are marketed primarily to middle school students. (Day 2 Trial Tr. 103:22-23). If Explorica's travelers, teenage students, approached Elderhostel seeking to book a trip, Elderhostel would turn them away. (Day 3 Tr. 110:15-21).

Confusion is also impossible because the teachers who organize Explorica tours organize a group and travel for free in exchange for bringing in the student customers. (Day 2 Tr. at 100:13-25). Explorica's catalogs invariably remind viewers of this fact, since it is an important part of Explorica's business. (Day 2 Tr. 108:9-20, 109:7-10). If a teacher mistakenly went to Elderhostel hoping to travel for free, the teacher quickly realize that it is not Elderhostel's business model. The teacher could not register a group, since Elderhostel participants register individually or as couples, and the teacher would most certainly notice that he or she would have to pay to participate in the program. Even if all the differences in the parties' logos, services, websites, and advertisements failed to tip the teacher off, having to pay out of pocket surely would. A purchaser who does not notice the difference between something that is free and something that costs hundreds or thousands of dollars is not a "reasonably prudent purchaser exercising ordinary care." See Boston Duck Tours, 531 F.3d at 12 (1st Cir. 2008). No reasonable jury could find that confusion is likely. See Pignons, 657 F.2d at 487-88 (finding appearance and price of cameras sold under each mark to be sufficiently different to support summary judgment of non-infringement).

        2.       The Parties' Services Are Different.

Explorica is a for-profit company that organizes trips for pre-formed groups of schoolchildren. By contrast, Elderhostel is a non-profit organization that offers educational programs for older adults. The median age for an Explorica traveler is 17; for an Elderhostel participant, 71. (Testimony of Z. Thomas). Explorica's trips are organized by teachers, who travel for free in compensation for attracting and chaperoning the paying students, while Elderhostel's programs are sold to the individual participants themselves. Only 10% of Elderhostel's programs involve travel. (Day 3 Tr. 101:17-19).

Nevertheless, Explorica asks the jury to find that this factor favors a finding of infringement on the grounds that that the parties' respective services both involve "educational travel services." Courts deciding trademark cases repeatedly reject such broad brush strokes to compare markets and require a more detailed analysis of the respective goods, services, and customers. See Riverbank, Inc. v. River Bank, 625 F. Supp. 2d 65, 72 (D. Mass. 2009) (disregarding broad characterization of parties' services as "financial services" and finding them dissimilar).[5] Specifically, courts have found it inappropriate to lump two businesses under the category of "travel," holding that the particular type of travel services must be considered. Windsor, Inc. v. Intravco Travel Ctrs., Inc., 799 F. Supp. 1513, 1523 (S.D.N.Y. 1992) (finding no likelihood of confusion between a tour operator of prepackaged tours and one that designs custom tours).

The pre-litigation documents of the parties show that neither party mentions the other when discussing its competitors. (See Day 4 Tr. 42:3-10). Explorica has submitted no evidence that the parties are competitors.

---

[5] See also Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993) (no likelihood of confusion even though both goods were broadly considered "gardening equipment."); Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983) ("[Plaintiff's] registered mark does not allow it to pre-empt the whole broad field of health care products."); Pignons, 657 F.2d at 487-88 ("Both the products in this case are single lens reflex cameras; otherwise they have little in common."); Mejia and Associates, Inc. v. IBM Corp., 920 F. Supp. 540, 548 (S.D.N.Y. 1996) (argument that both parties offer "educational services" is "so broad as to be meaningless for purposes of determining that the products are proximate.").

Arthur Frommer, one of the most known and respected names in the travel industry, has testified that the companies are not competitors as companies that focus on one demographic generally do not compete with companies that focus on a different demographic. (Testimony of A. Frommer). Mr. Frommer, who was once briefly an Elderhostel board member, has worked in the travel industry for 52 years, founded the Frommer travel guidebook series, and appears as a travel expert on television and in other media. (Testimony of A. Frommer). He declined to be provided any compensation for his time in this case, taking on Elderhostel's defense as a matter of principle. (Testimony of A. Frommer).

3. Explorica Cannot Rely on A "Natural Zone of Expansion" Theory.

As a matter of law, Explorica cannot rely on a "natural zone of expansion" theory to prove an overlap in markets. The First Circuit has criticized the theory, as it would "involve the obvious practical difficulties of defining the 'natural expansion path' of a business, [and] allow trademark owners to 'monopolize markets that their trade had never reached.'" Raxton Corp. v. Anania Assoc., Inc., 635 F.2d 924, 930 (1st Cir. 1980). To the extent the doctrine has any application, it applies only to geographic expansion and not expansion into an entirely new service area, as alleged here. Id. at 925.[6] Further, Mr. Olsson admitted at trial that Explorica has not increased the proportion of its travelers that are adults. (Day 2 Tr. 126:25-8; 128:3-7). No reasonable jury could find that Explorica intends to market to seniors (or does so now).

**C. Prospective Purchasers Are Careful And Unlikely to Be Confused.**

Even if there were a small overlap in the markets or channels of trade, the First Circuit has held in such a circumstance that "where goods are expensive and purchased after careful

---

[6] Other circuits have similarly limited the doctrine to situations where the trademark owner evidences "concrete evidence of expansion plans." Survivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 634 (9th Cir. 2005); see Savin Corp. v. Savin Group, 391 F.3d 439, 460 (2d Cir. 2004) (bare assertions regarding expansion insufficient even to create a disputed issue of fact); "there is a need for a strong possibility of expansion into competing markets for this factor to weigh in favor of a finding of infringement." M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005) (emphasis in original) (declining to apply doctrine even with some sales in new market). Explorica lacks any evidence of concrete efforts made to reach adult learners or the senior citizen market.

consideration" there is "no realistic likelihood that the relevant classes of consumers would be confused." Pignons, 657 F.2d at 489.

The services in question here are hardly impulse purchases. (Testimony of A. Frommer). In choosing any of Elderhostel's programs, with or without travel, the participants typically exercise great care, examining itineraries, planned lessons, destinations, etc. before choosing to enroll. (Day 2 Tr. 63:13-15, Testimony of A. Frommer). Similarly Explorica's travel programs involve the review of teachers, students, and parents before a tour is chosen. (Day 2 Tr. 38:20-25). Further, Explorica programs are booked months, if not years, in advance, giving potential chaperones and participants a lengthy period to consider the purchase. The services in question also cost hundreds if not thousands of dollars, (Day 2 Tr. 63:8-12), adding to the level of care taken by the consumers, and lessening the already slim likelihood that any would be confused. Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 F.2d 193, 194 (1st Cir. 1980) ("The greater the value of an article the more careful the typical consumer can be expected to be."), quoting McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979); Pignons, 657 F.2d at 489 ("those most likely to buy an expensive, sophisticated camera in a specialty camera store are also least likely to be confused by any similarity in…marks."). Under similar circumstances, courts find the customers unlikely to be confused:

> Here, the plaintiff sells relatively expensive tours…to consumers who, on average, are affluent and well-educated. Defendant, however, sells its services primarily to travel professionals, e.g., directors of student exchange organizations, travel agents, and group leaders of private organizations. Thus, the court concludes that both plaintiff and defendant sell their services to consumers who are quite sophisticated with regard to the aspects of travel in which each company specializes.

Windsor, Inc. v. Intravco Travel Centers, Inc., 799 F. Supp. 1513, 1526 (S.D.N.Y. 1992) (finding no likelihood of confusion).

**D. The Respective Channels of Trade and Advertising Are Different.**

Given their different customers and different services, it is no surprise that the channels of trade and advertising of the parties are also different. Explorica cannot cite any specific examples of overlap between the two. Instead, Explorica relies on generalities saying that both parties advertise via "direct mailings, catalogues, newsletters, the Internet, and trade publications." So do virtually all companies. What Explorica must show, and has not, is that the parties' advertisements appear in the same specific catalogues, trade publications, etc. U.S. Conference of Catholic Bishops v. Media Research Ctr., 432 F. Supp. 2d 616, 627-28 (E.D. Va. 2006) (declining to find similar channels of trade simply because both parties use Internet marketing). Elderhostel does very little advertising. (Day 3 Tr. 114:19). Explorica identified no overlap between the recipients of direct marketing, catalogs or newsletters, and did not identify any trade publications where both advertise.

**E. There Is No Actual Customer Confusion.**

Explorica claims a handful of instances of misdirected mail or email are evidence of confusion, but such wayward correspondence does not establish any "commercially relevant" confusion, i.e., that the company "lost profits or lost customers" as a result of the confusion, which Explorica must show. Riverbank, 625 F. Supp. 2d at 74 citing Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F. 3d 8, 17 (1st Cir. 2004). Explorica has not shown a single lost customer or a penny of lost profits as a result of Elderhostel's use of the EXPLORITAS mark. Further, since Elderhostel just changed its name a few months ago, it is not surprising that a tiny fraction of its 100,000 to 150,000 annual customers might initially accidentally go to a wrong website. Such "temporary confusion" is not sufficient to weigh in favor of a likelihood of confusion unless the plaintiff can show that the "temporary confusion…had any effect whatever on the ultimate decision of a purchaser whether to [purchase services]." Boston Duck Tours, 531 F.3d at 25 quoting Astra Pharm. Prods. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983) and citing Lang v. Retirement Living Publ'g Co., Inc., 949 F.2d 576, 582-83 (2d Cir. 1991). This kind of confusion, where "consumers will realize they are at the wrong site and go

to an Internet search engine to find the right one – is not substantial enough to be legally significant." Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 125 (D. Mass. 1999); Teletech Customer Care Management (Cal.), Inc. v. Tele-Tech Co., 977 F. Supp. 1407, 1414 (C.D. Cal. 1997) ("[A]n initial confusion on the part of web browsers…is not cognizable under trademark law."). Misplaced faxes or communications happen all the time in the travel industry without significant harm. (Testimony of A. Frommer).

Many of Explorica's alleged instances of confusion are at most instances of carelessness or inadvertent mistake. Such carelessness is not evidence of actual confusion and cannot support a jury finding that confusion is likely. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996) ("confusion resulting from the consuming public's carelessness, indifference, or ennui" is not objectionable under the Lanham Act); Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 636 (6th Cir. 2002) (highlighting the distinction between carelessness and confusion); Duluth News Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1098 (8th Cir. 1996) (rejecting claim of actual confusion and finding that misdirected mail and phone calls showed "inattentiveness on the part of the caller or sender rather than actual confusion.").

The fact that a misdirected communication came by e-mail is enough by itself to "raise[] the possibility that consumers sent the inquiries [to the wrong party] because they were inattentive or careless, as opposed to being actually confused." Therma-Scan, 295 F.3d at 636. Here, we have direct, unambiguous testimony that the Lufthansa-Exploritas contract was sent to Explorica only through carelessness and not through confusion. Lufthansa's e-mail software substituted Explorica for the address Ms. Von Kaszner meant to type, and she "sent it without double-checking." (Von Kaszner Tr. 23:7). Other purportedly misdirected phone calls and email are also inadequate evidence of actual confusion. Duluth News, 84 F.3d at 1098. With regard to Air France, Explorica's Mr. Cosse testified that he has "no reason to believe that they

were confused." (Day 3 Tr. 63:10-12). There is no reason to believe Shutz suffered confusion, as opposed to careless error, and Kass's experience was primarily a result of an unknown third party misinforming her (or her making up information) about the supposed age policy change, preventing her from being tipped off that she was in the wrong place by the numerous pictures of children on the Explorica website. (Kass Tr. 7:11-8:5, opining that Elderhostel was no longer just for people 55 and older but recognizing that she had no basis for this opinion, and "[m]aybe [she] made it up.")

Explorica also has not submitted any evidence of any customer who purchased the product of one company thinking it came from another. For its part, Elderhostel demonstrated that, in focus groups conducted to evaluate EXPLORITAS, not a single participant raised any association with Explorica. (Day 3 Tr. 137:23-25, Day 4 Tr. 58:15-17). Confusion is extremely unlikely, as any reasonable jury would conclude.

**F. Elderhostel Had No Intent To Infringe Explorica's Mark.**

In order to show bad-faith intent, the plaintiff must show that the defendant had an "intent to deceive" consumers or to "benefit from [plaintiff's] reputation." Pignons, 657 F.2d at 491. Where the parties "are not competitors and do not offer the same services, it would not be reasonable to infer that [defendant] intended to 'reap what it had not sowed' or get a 'free ride.'" Riverbank, 625 F. Supp. 2d at 75. Here, Elderhostel's decision-makers proceeded with the Exploritas name only after concluding that there was no danger of confusion with Explorica. (Day 3 Tr. 127:19-130:6, 140:4-9). Elderhostel had nothing to gain from any confusion because Elderhostel does not sell tours to student groups. (Day 3 Tr. 110:15-21). Elderhostel is an older and larger organization with significantly greater annual sales than Explorica and thus has no motive to create confusion with a smaller company, especially one that provides different services to different customers. (Testimony of Arthur Frommer). Elderhostel also would not wish to be confused with a for-profit enterprise, since it relies in part on charitable donations to fund its operations. (Day 3 Tr. 86:25-87:10). The record is very clear that the EXPLORITAS

mark was generated by combining "explore" and "veritas," (Day 4 Tr. 29:12-50:4), and that the mark was adopted in good faith. No reasonable juror could find otherwise, since Explorica has provided no evidence that Elderhostel had an "intent to deceive" consumers or to "benefit from [plaintiff's] reputation." See Pignons, 657 F.2d at 491. For the same reasons, no reasonable jury could find that Elderhostel willfully infringed the EXPLORICA mark.

**G. EXPLORICA is Not A Strong Mark.**

Significant third-party use of a mark or a portion of a mark, such as "explor," weakens its strength and decreases the likelihood of confusion associated with its use. First Savings Bank v. First Bank System Inc., 101 F.3d 645, 653-54 (10th Cir. 1996) ("The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark."). "When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks." First Savings Bank, 101 F.3d at 655; accord Sun Banks v. Sun Federal Sav. & Loan Assoc., 651 F.2d 311, 316 (5th Cir. 1981).

Explorica's mark shares the term "explor" with hundreds of other travel companies (Testimony of J. Huston), far more than the mere dozens typically used to establish weak marks. See Pignons, 657 F.2d at 491 (finding no likelihood of confusion where mark in question shared a root with 32 other federal and state registrations); Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549, 553 (1st Cir. 1948) (finding mark weak where root was shared with forty other registrations). Other registered trademarks include EXPLORA, EXPLORATIONS, and EXPLORIST, and website addresses include explorita.com. (Testimony of J. Huston). Since these hundreds of marks and website addresses all contain "explor," consumers know that they need to distinguish marks that contain "explor" from one another, and would not simply assume they were all associated with Explorica or any other single company. Explorica itself has admitted that "the root EXPLOR is subject to a significant degree of dilution in the travel industry." (Exhibit 198 at 6). Explorica underscored the relevance of other trademark

registrations in reducing the likelihood of confusion, citing 44 other marks that shared the root "EXPLOR." (Id. at 5-6). That was in the year 2000. At trial, Elderhostel introduced evidence that the examiner of the EXPLORITAS application found 368, nearly nine times as many. (Testimony of J. Huston, Exhibit FP) Elderhostel also specifically discussed approximately twenty third-party "EXPLOR"-formative marks at trial. (Testimony of J. Huston, Exhibits BW-CG, CJ-CP, CT-CX, and EN-EP). The generic leading portion of Explorica's mark, "explor," is thus afforded little, if any protection.

Explorica may not monopolize the use of "explor" as a root because a mark that is "merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller." Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir. 1970); see also Boston Duck Tours, 531 F.3d at 23 (stating that the mark "BOSTON DUCK TOURS" is conceptually weak since "Boston" is a descriptive term and "Duck Tours" is a generic term).

Explorica admits that "travel-related businesses commonly use the term 'explore' in a descriptive sense to promote to consumers the notion that their products are used on or in connection with 'exploring' the world." (Exhibit 198 at 4; see Testimony of A. Frommer). Because of this descriptive effect, hundreds of other travel companies besides Explorica have marks or website addresses that begin with "explor." (Testimony of J. Huston & A. Frommer). Explorica may not now appropriate the root "explor" as its exclusive trademark. See Bada, 426 F.2d at 11; Gift of Learning Found., 2001 U.S. Dist. LEXIS 25301, at *22-24 (S.D. Fla. Oct. 29, 2001) (finding that mark was descriptive based on evidence of numerous third-parties using variations of the terms contained in plaintiff's mark and evidence of seven third-parties using some combination of the terms).

### H. Summary of Pignons Factors

There is no likelihood that prudent, sophisticated customers, looking to purchase costly travel services from Explorica for a school group, would instead accidentally sign one or more

individuals up to an Elderhostel educational program. It has never happened, and never could. Even if a customer somehow managed to make initial contact with Elderhostel intending to contact Explorica, they would be turned away. (Day 3 Tr. 110:15-21).

## IV. NO DILUTION

A federal registration of a trademark is a complete bar to state dilution claims under 15 U.S.C. 1125(c)(6)(A). That statute states:

> (6) Ownership of valid registration a complete bar to action
>
> The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—
>
> (A)
>
> (i) is brought by another person under the common law or a statute of a State; and
>
> (ii) seeks to prevent dilution by blurring or dilution by tarnishment

Elderhostel obtained Federal Registration 3,729,057 for its EXPLORITAS® mark on December 22, 2009. (Joint Exhibit 94).

Because § 1125(c)(6)(A) is a complete bar to state dilution claims, this Court should enter judgment as a matter of law in favor of Elderhostel on Explorica's state dilution claim under Mass. Gen. Laws. ch. 110H § 13.

Even if this bar did not exist, "[t]o sustain an action [for dilution under Massachusetts law], a plaintiff must show that its mark is distinctive, and that the defendant's use of a similar mark has created the likelihood of dilution." Pignons, 657 F.2d at 493-94. In the First Circuit, dilution requires either (1) actual confusion, which Explorica has not established as explained above, or (2) use of a mark "in a way that detracts from, draws on or otherwise appropriates the

goodwill and reputation associated with the plaintiff's mark." Id. at 494-95.  As with the defendant's use of ALPHA in Pignons, Elderhostel's EXPLORITAS does not pose a likelihood of dilution because it is used "in conjunction with [] uniquely identifying designation[s]:" the EXPLORITAS logo, globe, and tagline.  Id.  In addition, the mark is sufficiently different from EXPLORICA, as explained above, that there is no actionable similarity or risk of dilution.  The court in Pignons declined to agree with plaintiffs that "any diminution in the uniqueness and individuality of the plaintiff's mark resulting from the defendant's use of a similar mark" is actionable.  Id. at 495.  As in Pignons, the plaintiff's mark exists in a crowded field.  The common letters EXPLOR in the two marks are already "highly diluted," as Explorica admitted before the PTO.  (Exhibit 198).  Just like Pignons' claim, Explorica's "claim of dilution [] rests on some kind of supposed incremental harm sustained through [Defendant's] use of a commonplace word, widely associated with many situations and products, where there is shown neither product confusion nor misappropriation of goodwill or reputation. This will not do." Pignons, 657 F.2d at 495.

## V.   NO UNFAIR COMPETITION

Explorica's claim for unfair competition falls with its other claims.  New England Cord Blood Bank, No. Civ.A. 2004 WL 222357, at *5 ("Because [plaintiff] cannot demonstrate a likelihood of confusion, it cannot show a likelihood of success on the merits of its … unfair competition claims."); McKernan v. Burek, 118 F.Supp.2d 119, 125 (D.Mass. 2000) ("Because [plaintiff's] claims under state and federal trademark law fail, this related claim under M.G.L. ch 93A § 11 is also deficient.").  Explorica failed to demonstrate a likelihood of confusion, as explained above, and thus its unfair competition claim has not been proven.  Id.

## VI.   CONCLUSION

For the foregoing reasons, Elderhostel respectfully requests that the Court enter judgment as a matter of law in favor of Elderhostel on all claims.

Respectfully submitted,

ELDERHOSTEL, INC.

By its attorneys,

Dated: February 22, 2010

/s/ Michael A. Albert

Michael Albert, BBO #558566
malbert@wolfgreenfield.com
Allen Rugg, BBO #674484
arugg@wolfgreenfield.com
Jeffrey C. O'Neill, BBO #663254
joneill@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: 617.646.8000
Fax: 617.646.8646

Ilan N. Barzilay, BBO # 643978
ibarzilay@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Tel: 617.946.4800
Fax: 617.946.4801

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert